Norman C. GRAY, Jr., et al., Plaintiffs,

v.

J. Shane CREAMER, Attorney General of
the Commonwealth of Pennsylvania,
et al., Defendants.

Civ. A. No. 71–445.

United States District Court,
W. D. Pennsylvania.

June 21, 1971.

Ronald Berlin, James H. Logan, Harry F. Swanger, Mark Senick, Neighborhood Legal Services Assn., Michael Louik, Pittsburgh, Pa., for plaintiffs.

J. Shane Creamer, Atty. Gen., John M. Duff, Deputy Atty. Gen., Joseph J. Pass, Jr., Sp. Asst. Atty. Gen., Frederick N. Frank, Asst. Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, District Judge:

In this Civil Rights action, the plaintiffs having been granted the right to proceed in forma pauperis, the immediate matter before the Court is a Motion to Dismiss. Jurisdiction has been invoked pursuant to 28 U.S.C.A. §§ 1343 and 2201 and 42 U.S.C.A. §§ 1983 and 1985. The view of this Court, as more fully developed below, is that this action, though it poses most serious problems and underscores the need for deep thought about the penal system in Pennsylvania, and indeed in the United States, should be dismissed.

■■ The test of whether or not dismissal of the Complaint is proper is whether it can be said that such claims as made in the Complaint are on their face so utterly without legal merit that the Complaint must be condemned as frivolous under 28 U.S.C. § 1915. Lawson v. Prasse, 411 F.2d 1203 (3d Cir. 1969). This Court believes that, however one's sympathy lies for the conditions of the penal inmates, the Complaint asserts no wrongs which a federal court can remedy. Each of the grounds raised in the Complaint is a matter of state administration of the Pennsylvania penal system or a matter of maintaining discipline, safety or security within this system. Thus, even though for purposes of considering the Motion to Dismiss, all of the facts asserted in the Complaint, as modified by stipulation of counsel, are accepted as true, I do not believe that the Complaint sets forth any activity on the part of the defendants which violates any constitutional right of the plaintiffs. It is clear that a civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief. Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970). It is the Court's considered judgment, after weighing the arguments of counsel, reviewing all the authorities cited by the parties, and conducting its own independent research, that no constitutional rights have been denied, and that all of the matters raised in this proceeding relate to internal prison administration with which federal courts should not interfere.

■ This Court is well aware of the principle that a person does not lose all of his constitutional rights upon entering the gates of prison. Certainly the guarantees of the due process and equal protection clauses of the Fourteenth Amendment remain as rights to be afforded prisoners. Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968) and Washington v. Lee, 263 F.Supp. 327, 331 (M. D.Ala.1966), aff'd per curiam 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). But this does not mean that all constitutional rights follow a man into prison, or that those which do stand undiluted with the full potency of such rights "outside the gates."

"* * * (w)e must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security.

To determine, with precision, those rights which follow an inmate into prison involves a process of weighing and balancing conflicting interests. * * * *The task of striking the proper balance between these conflicting interests is generally within the competence of the prison authorities.*" (Emphasis added.) Gittlemacker v. Prasse, *supra*, 428 F.2d 1 at 4.

Indeed, were the rule otherwise, it would mean that every complaint or difference which develops between a penal inmate and any person in authority in the institution would require a member of the federal judiciary to supervise the daily internal administration of state prisons on the pretext of a violation of the Civil Rights Statutes.

This potentiality is perplexing, not because the Court shrinks from a duty rightfully its own, but because the opportunity for continued vigilance and observation, and the human and monetary resources that would be required rest not with the judiciary but with the legisla-

tive and executive branches of state government. Moreover, the federal judiciary lacks the knowledge and expertise of men in such fields as penology, psychology, and psychiatry who through their training and experience are far better equipped to evaluate and remedy the underlying, and perhaps real, problem posed by this Complaint, that of reform of the penal system as a whole. Long v. Parker, 390 F.2d 816 at 820 (3d Cir. 1968). As stated in a most thorough, complete and scholarly Opinion of the Honorable Irving R. Kaufman, writing for the United States Court of Appeals for the Second Circuit sitting in banc:

> "It would be mere speculation for us to decree that the effect of equipping prisoners with more elaborate constitutional weapons against the administration of discipline by prison authorities would be more soothing to the prison atmosphere and rehabilitation of the prisoner or, on the other hand, more disquieting and destructive of remedial ends. This is a judgment entrusted to state officials, not federal judges." Sostre v. McGinnis, 442 F.2d 178, 197, (2nd Cir. 1971).

■ It is against this backdrop that the problems posed by the Complaint must be analyzed. As a general proposition, I believe the overriding principle to be that a federal court must and should abstain from interjecting itself into the day-to-day operation of a state penal institution. Certainly prison officials have wide discretion in matters of prison operation and discipline. Negrich v. Hohn, 379 F.2d 213 (3d Cir. 1967). And where the steps taken by the states reasonably maintain discipline, such action is not under the supervisory direction of federal courts. Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937 (3d Cir. 1969).

■ The Complaint asserts that the plaintiffs' constitutional rights have been abridged because their mail has been censored. However, the right to censor incoming or outgoing mail is a concomitant to reasonably maintaining prison discipline. I believe that prison officials have this right and that it enables them to maintain necessary control over the operation of their prisons. United States ex rel. Oakes v. Taylor, 274 F. Supp. 42 (E.D.Pa.1967) and In the Matter of Leamer, 322 F.Supp. 578 (W.D. Pa.1971). See also Sostre, supra, where it is held that prison authorities may open and read all correspondence to and from prisoners so long as communications to courts and attorneys are not stopped by such action. No such interference is alleged in the present Complaint, and therefore the Complaint sets forth no improper activity which this Court has the power to restrain. No cause of action under the Civil Rights Act is stated by plaintiffs asserting that their personal belongings have been confiscated. Urbano v. Calissi, 384 F.2d 909 (3d Cir. 1969). Transfers from one section of a prison to another section require no formal hearing; no constitutional rights are violated by such transfers. Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970). In a recent opinion of the Third Circuit Court of Appeals, the Court stated:

> " * * * this court cannot conclude that the transfer of an inmate from one wing to another * * * involved any federally protected rights. Discipline reasonably maintained in state prisons is not under the supervision of federal courts unless such actions are so severe as to require constitutional protections." Hanvey v. Pinto, Superintendent, 441 F.2d 1154 (3d Cir. 1971).

I believe the same principle applies to transfers from one prison to another, especially since there is no constitutionally vested right to serve one's sentence in any given institution. Siegel v. Ragen, 180 F.2d 785, (7th Cir. 1950), cert. denied 339 U.S. 990, 70 S.Ct. 1015, 94 L. Ed. 1391 (1950), rehearing denied 340 U.S. 847, 71 S.Ct. 12, 95 L.Ed. 621 (1950). By the same token, there is no constitutional right infringed by placing a state penal inmate in solitary confinement or in administrative segregation. Ford, supra, and Burns, supra. It seems

to me that the right to take such action is equivalent to the right to administer discipline, maintain safety, or security. *Gittlemacker, supra.* Nothing in such action rises to the level of cruel and unusual punishment in violation of the Eighth Amendment. *Burns, supra.* See also Wright v. McMann, 387 F.2d 519 (2nd Cir. 1967) and Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966). See also Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969) where the test of what constitutes cruel and unusual punishment is stated to be whether the activity involved "is sufficiently severe in the circumstances to shock the conscience of a reasonable man." Such action does not shock the conscience of this Court, but appears reasonably related to maintaining discipline.

The question presented to this Court by the shutting down of VIBRATIONS, a weekly newsletter staffed, edited, and produced through the co-operative efforts of "outsiders" and penal inmates, plaintiffs herein, is disconcerting. The newsletter, as set forth in the Complaint, offered a glimmer of hope that some rehabilitative and purposeful function could be performed within the confines of a state penal institution. But this Court can no more command state prison administrators to allow a reward than it can forbid punitive action where no consitutional infringement exists. Aside from the rewarding, rehabilitative, and worthwhile effects that VIBRATIONS is asserted to have had, taking away the equipment, or access to such equipment, used in connection with the publication would not appear to have infringed any freedom of the press, even though a doubtful property right may have been invaded. But as noted above, taking away property does not give rise to a Civil Rights action. *Urbano, supra.* And see Eisen v. Eastman, 421 F.2d 560 (2nd Cir. 1969) where it is clearly stated that the right invaded in a Civil Rights action must be a matter of personal liberty, not a property right. This Court is aware that publishing a newspaper in the "free world" is considered to be a fundamental personal right rather than a property right. See Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L. Ed. 1031 (1941), which involved a question of free speech. But such a right is not absolute; even on the "outside" regulations must be complied with or sanctions may be imposed. For example, a newspaper may not take and publish photographs of courtroom proceedings in violation of Court rules. Tribune Review Publishing Company v. Thomas, 254 F.2d 883 (3d Cir. 1958). Thus, if the Court is in error in concluding that no personal rights have been invaded, nevertheless, those rights, if any, which have been curtailed are not absolute. I believe the right to publish a newspaper, not absolute outside the gates, is a fortiori, one subject to modification dictated by the necessities of orderly prison administration. In *Gittlemacker, supra,* where a question of freedom of religious exercise was involved, the Court said:

"The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion can not be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice."

Exercise of religion is no less fundamental than freedom of the press, and thus I do not believe that the state is under a duty to supply or provide every convict who chooses to engage in newspaper publication with a printing press or the space and equipment required therefor, any more than it must supply each inmate with a clergyman. Such a requirement is ludicrous and incredible to contemplate.

The right to curtail or foreclose publication of the newsletter seems to be a matter within the sound discretion of prison administrators. Especially is this so when one considers the vast amount of paper which accumulates before, during, and after publication of such a pe-

riodical. The threat of fire is itself a sufficient ground for terminating the newsletter. But I do not base any determination on such a possibility. Rather, as indicated above, the determination to allow or disallow the prisoners to maintain a newsletter is solely within the sound discretion of prison officials charged with the duty to maintain discipline and order in the institution and should not be disturbed by a federal court.

■ There remain for disposition allegations asserting that the defendants have infringed plaintiffs' constitutional rights by unlawfully engaging in physical and verbal harassment and intimidation and promulgating unduly restrictive prison regulations and practices limiting freedom of assembly. These allegations are conclusory in nature and are unsupported by any specific factual detail in the Complaint. No facts set forth any specific actions on the part of the named defendants which would substantiate either of these claims. Accordingly, dismissal is proper as to these allegations because the Complaint is insufficient and conclusory. Negrich v. Hohn, *supra*. As in *Negrich*, the charges are made generally against all defendants, not against any particular defendant. But as pointed out in *Negrich*, all the defendants could not have engaged, for example, in physical or verbal harassment and intimidation. There is absolutely no assertion that any of the named defendants engaged in such activity; at best the facts assert that some prison guards were involved in taunts, threats, or rumors. No facts set forth the use of physical force by anyone. There are no facts substantiating the claim that regulations were unduly restrictive. Such a broad statement, without more, is insufficient to state a claim for relief under the Civil Rights Act. If these were allegations propounded by the plaintiffs themselves, perhaps more liberality could be afforded. The complainants here are not proceeding pro se and it cannot be said that they are "untutored in legal niceties." Kelly v. Butler County Board

of Commissioners, 399 F.2d 133 (3d Cir. 1968).

In view of the foregoing, this Court takes the position that the Motion to Dismiss should and must be granted.