Norman C. GRAY, Jr., et al., Appellants,

v.

J. Shane CREAMER, Attorney General of the Commonwealth of Pennsylvania, et al.

No. 71–1714.

United States Court of Appeals, Third Circuit.

Argued June 13, 1972.

Decided Aug. 14, 1972.

Ronald A. Berlin, Pittsburgh, Pa., for appellants.

Frederick N. Frank, Deputy Atty. Gen., J. Shane Creamer, Atty. Gen., Pittsburgh, Pa., for appellees.

Before SEITZ, Chief Judge, and VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

On May 13, 1971, plaintiffs Gray, Harris, Moore, Holden and Sowers, prisoners or former prisoners at the State Correctional Institution at Pittsburgh (the "Western Penitentiary"), brought the instant civil rights action on behalf of themselves and all others similarly situated to secure redress for various allegedly unconstitutional actions by the defendants. Jurisdiction was invoked pursuant to 28 U.S.C. §§ 1343, 2201 and 42 U.S.C. §§ 1983, 1985. Plaintiffs allege that they had been deprived of rights guaranteed to them by the First, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article One, Section Seven, of the Constitution of the Commonwealth of Pennsylvania, P.S.; both injunctive and declaratory relief were requested. On May 25, 1971, at a "final pretrial hearing" the defendants presented a "Motion to Dismiss, Presenting Defenses of Failure to State a Claim and of Improperly Bringing a Class Action," and by order of June 21, 1971, the district court granted this Motion.[1] See Gray v. Creamer, 329 F.Supp. 418 (W.D.Pa.1971). For the reasons to be stated, we reverse and remand to the district court 'for further proceedings consistent with this opinion.

## I.

■■ We note at the outset that a motion to dismiss a complaint, including a prisoner's civil rights complaint, for failure to state a claim upon which relief can be granted is subject to a very strict standard. In Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court reviewed a district court grant of such a motion, which grant had been affirmed by the Court of Appeals on the ground that prison officials are vested with "wide discretion" in disciplinary matters. The Court reversed:

"Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by

---

1. At the pretrial hearing held on May 25, 1971, the defendants conceded some of the allegations in the plaintiffs' complaint, as, for example, the allegations contained in Paragraphs 39 and 41 of the complaint that certain prisoners, including plaintiffs Moore and Holden, were transferred to punitive segregation and segregation without being charged with violations of prison regulations or granted a hearing. The district court ignored such stipulations in its opinion and disposed of the case on the basis of the allegations of the complaint. See N.T. 76.

lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." 404 U.S. at 520, 92 S.Ct. at 595.

See 2A Moore's Federal Practice ¶ 12.08 at 2271–74 (1968):

"[A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" (Emphasis in original.)

Thus, the district court's grant of defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted was proper only if, taking as true all the allegations in the complaint and drawing the inferences most favorable to the plaintiffs, it appeared beyond doubt that plaintiffs were entitled to no relief. See, e. g., Haines v. Kerner, *supra*; Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971); Rivers v. Royster, 360 F.2d 592 (4th Cir. 1966); *cf.* Long v. Parker, 390 F.2d 816, 821 (3d Cir. 1968). It is with this standard in mind that we turn to an examination of the facts alleged in the complaint.[2]

## II.

The instant suit apparently arises from the publication of a prison news letter called *Vibrations* and the reaction of the prison authorities to this news letter and to the prisoners connected with it. According to the complaint, *Vibrations* was established in December 1970 by a group of 12 prisoners, including plaintiffs Gray, Harris, Moore and Sowers, with the encouragement of the then-acting Director of Treatment at Western Penitentiary. This news letter was intended to inform both the general public and the administration of Western Penitentiary, and to this end it contained a wide variety of information, including poems, astrology forecasts, informational articles or essays, religious expressions, lists of prisoners having illnesses, letters to the editors, statements of editorial policy, and requests for supplies needed by the news letter. *Vibrations* was published weekly beginning on Christmas Eve 1970, and by April 1971 at least 12,000 copies had been mailed outside of Western Penitentiary and numerous copies circulated within the prison.[3] Plaintiffs alleged that the publication of *Vibrations* was of great benefit to the prisoners themselves, the prison administration, and the citizens outside the prison. Plaintiffs further alleged that the *Vibrations* staff exercised stringent self-censorship with the result that no material was published that could be

2. In Negrich v. Hohn, 379 F.2d 213 (3d Cir. 1967), this court upheld the dismissal of a prisoner's civil rights complaint on the ground, *inter alia*, that the complaint as filed was "broad and conclusory" and failed "to state facts in support of its conclusions." See 379 F.2d at 215. Although we have observed that actions under the civil rights statutes are to be "liberally construed by reviewing courts," United States ex rel. Birnbaum v. Dolan, 452 F.2d 1078, 1079 (3d Cir. 1971), we have continued to affirm the dismissal of actions which contain only vague and conclusory allegations. See, e. g., Marcedes v. Barrett, 453 F.2d 391 (3d Cir. 1971); United States ex rel. Birnbaum v. Dolan, 452 F.2d 1078 (3d Cir. 1971); Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971). There is no reason to believe that this

procedure is inconsistent with the Court's holding in Haines v. Kerner, *supra*, since in that case the prisoner made specific allegations of unconstitutional conduct. As will appear below, however, since at least some of the allegations made by the plaintiffs are specific, the procedure involved in *Negrich* is inapplicable to the instant case.

3. Plaintiffs alleged that *Vibrations* was entirely supported by donations from outside sources, and that the defendants frustrated their efforts to expand by refusing to permit the use of certain donated equipment (typewriters, cameras, etc.) and withholding financial contributions and mail regarding such contributions.

interpreted to be obscene, libelous, or dangerous to prison administration, discipline, and security.

In April 1971, relationships between the *Vibrations* staff and the prison administration deteriorated markedly. On April 19, 1971, after several meetings between individual defendants and members of the *Vibrations* staff, including plaintiff Gray, the *Vibrations* office at the Western Penitentiary was padlocked by order of defendants, and certain materials found in the office were confiscated and presumably destroyed. Since that time defendants have made it impossible for *Vibrations* to be published.

Further, according to the complaint, beginning on April 19, 1971, the plaintiffs and members of the class they represent were transferred to other prisons, placed in punitive and administrative segregation, suspended from jobs they has held and subjected to physical and verbal abuse from guards and the confiscation of their personal belongings. Specifically plaintiffs alleged that on or after April 19, 1971, defendants caused certain prisoners, including plaintiffs Moore and Holden, to be placed in either punitive segregation or segregation at the Western Penitentiary, and that the prisoners so isolated were neither charged with a violation of prison regulations nor given a hearing. Further, it was alleged that during a two-week period subsequent to April 19, 1971, defendants caused at least ten prisoners, including plaintiffs Gray, Moore and Harris, to be transferred to other penal institutions in the state without being given a hearing nor charged with any violation of prison regulations prior to the transfers. Plaintiffs alleged that some of the prisoners so transferred, including plaintiffs Gray, Moore and Harris, were placed in punitive segregation in the institutions to which they were transferred without being charged with a violation of any penal regulation and without being granted a hearing.

Plaintiffs also alleged that letters written to various named plaintiffs were never received by them and that some outgoing mail sent by prisoners was not forwarded by the prison officials, which actions were allegedly in violation of a directive issued by defendant Sielaff. It was further alleged that the defendants do not permit certain publications to be delivered to plaintiffs and the class they represent. Finally, plaintiffs alleged that a prison regulation and/or practice effective since April 19, 1971, has arbitrarily restricted the number of prisoners who can lawfully congregate to an unreasonably small number.

### III.

It remains true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). "Some deprivations are a necessary and expected result of being an inmate of a penal institution, which institution must provide for the custody, maintenance, discipline and, optimistically, rehabilitation of those who have violated the laws of the sovereign." Jackson v. Godwin, 400 F.2d 529, 532 (5th Cir. 1968). Furthermore, the task of determining the rights and deprivations of state prisoners falls principally upon the prison authorities, whose judgment in the exercise of this important responsibility the federal courts will not ordinarily question. As this court has recently stated:

> "The task of striking the proper balance between these conflicting interests is generally within the competence of the prison authorities. Thus, the federal courts have been understandably reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials." Gittlemacker v. Prasse, 428 F.2d 1, 4 (3d Cir. 1970).

The fact that the federal courts will normally defer to the judgment of the state prison authorities on

matters relating to the treatment of prisoners is, however, not to say that such prisoners are bereft of all constitutional rights or that the federal courts will refuse to intervene to protect those rights which the prisoner retains. "Acceptance of the fact that incarceration, because of inherent administrative problems, may necessitate the withdrawal of many rights and privileges does not preclude recognition by the courts of a duty to protect the prisoner from unlawful and onerous treatment of a nature that, of itself, adds punitive measures to those legally meted out by the court." Jackson v. Godwin, *supra,* 400 F.2d at 532. The Supreme Court has recently summarized the federal courts' duty in this area as follows:

"Federal courts sit not to supervise prisons but to enforce the constitutional rights of all 'persons' which include prisoners. We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations. But persons in prison, like other individuals, have the right to petition the Government for the redress of grievances which, of course, includes 'access of prisoners to the courts for the purpose of presenting their complaints.' " Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (Order of March 20, 1972.) (per curiam).

See, *e. g.,* Owens v. Brierley, 452 F.2d 640, 642 (3d Cir. 1971).

■ Thus, when a state prisoner makes specific allegations of unconstitutional treatment, the federal courts must become involved in the administration of the prison system to the limited extent of determining (1) whether the inmate is entitled under the federal Constitution to the particular right claimed—a determination which often involves "a process of weighing and balancing con-

flicting interests," Gittlemacker v. Prasse, 428 F.2d at 4—(2) if so, whether such right has been infringed in the case before it, and (3) if a constitutional right has been infringed, what remedy is appropriate.

### IV.

■ In the instant case plaintiffs in their complaint asserted several constitutional rights which it was alleged the defendants had abridged. We find it sufficient for purposes of this appeal to discuss in detail only the claim that plaintiffs' Fourteenth Amendment right to due process of law was abridged by the circumstances of their transfers from the general prison population to "segregation" or "punitive segregation." It is, of course, clear beyond doubt that a state prison inmate continues to receive the protection of the due process clause of the Fourteenth Amendment. See, *e. g.,* Washington v. Lee, 263 F. Supp. 327, 331 (M.D. Ala.1966), aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1967):

"[I]t is well established that prisoners do not lose all their constitutional rights and that the Due Process and Equal Protection Clause of the Fourteenth Amendment follow them into prison and protect them there from unconstitutional action on the part of prison authorities carried out under color of state law."

See also Jackson v. Bishop, 404 F.2d 571, 576 (8th Cir. 1968) (Blackmun, Cir. J.). Plaintiffs alleged in their complaint that they and members of the class they represent were transferred into solitary confinement or "punitive segregation" [4] without being either charged with a breach of prison regulations or given a hearing. The district court dismissed this charge in the complaint on the ground that "there is no constitutional right infringed by placing a state penal inmate in solitary confinement or in ad-

---

4. The complaint alleged that while in punitive segregation prisoners are not permitted out of their cells for any period of time, and are deprived of personal belongings, visits, and other rights afforded the general prison population." Complaint, ¶ 39.

ministrative segregation," 329 F.Supp. at 420, suggesting that "the right to take such action is equivalent to the right to administer discipline, maintain safety, or security." 329 F.Supp. at 421. The Government has argued in support of the district court's dismissal of this count that "decisions concerning punitive segregation or transfer of state prisoners are wholly within the discretion of prison officials and are not a proper subject for judicial interference." Brief for appellees at 16. We do not consider it appropriate, on review of the district court grant of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, to suggest what may be the precise requirements of the due process clause in this case, since the determination of "what process is due" will necessarily depend upon facts to be developed in the district court on remand. See Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960):

> "[A]s a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden of that proceeding, are all considerations which must be taken into account." [5]

But we do hold that the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing [6] does not, absent unusual circumstances not evident in the pleadings, meet minimal due process requirements.

See Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971):

> "If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner were confronted with the accusation, informed of the evidence against him, . . . and afforded a reasonable opportunity to explain his actions." (Citations and footnote omitted.)

This decision is consistent with a great number of federal court decisions indicating that the Fourteenth Amendment to the United States Constitution requires that certain safeguards accompany the imposition by state prison authorities of substantial punishment. See Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971); Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); Alverez v. Turner, 422 F.2d 214, 220 (10th Cir. 1970); Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966); Krause v. Schmidt, 341 F. Supp. 1001 (W.D.Wis.1972); Landman v. Royster, 333 F.Supp. 621, 651–656 (E.D.Va.1971); Sinclair v. Henderson, 331 F.Supp. 1123 (E.D.La.1971), on hearing after remand, 435 F.2d 125 (5th Cir. 1970); Clutchette v. Procunier, 328 F.Supp. 767 (N.D.Cal.1971); Bundy v. Cannon, 328 F.Supp. 165 (D.Md.1971); Rhem v. McGrath, 326 F.Supp. 681 (S.D. N.Y.1971); Meola v. Fitzpatrick, 322 F.Supp. 878, 885–886 (D.Mass.1971); Wright v. McMann, 321 F.Supp. 127 (N.D.N.Y.1970), on hearing after remand, 387 F.2d 519 (2d Cir. 1967); Carothers v. Follette, 314 F.Supp. 1014 (E.D.N.Y.1970); Kritsky v. McGinnis, 313 F.Supp. 1247 (N.D.N.Y.1970); *Cf.* United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971).

---

5. See also Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969).

6. This is not to say, of course that this notice or hearing must in all cases precede the transfer to solitary confinement; in some cases, as, for example, during a prison riot, notice and hearing must be delayed a reasonable period of time.

## V.

Plaintiffs' complaint also contained allegations of the deprivation of other constitutional rights. Since this case is to be remanded to the district court for consideration on the merits, at which time the allegations in the complaint will be more fully developed, we make the following observations:

1. Plaintiffs alleged that their rights under the First and Fourteenth Amendments to the Constitution were violated by the actions of the defendants in unlawfully shutting down the news letter, *Vibrations*, by the transfer of prisoners to other penal institutions and/or to varying degrees of isolation, by unlawful physical and verbal harassment, and by the unlawful confiscation of various personal belongings bearing a significant relationship to constitutionally protected freedoms. We note that even though a state prisoner may have no constitutional right to distribute his materials within the prison, see Sostre v. McGinnis, *supra,* 442 F.2d at 190–191, 202, and n. 48, he does have a right to be free of discriminatory punishment inflicted solely because of his beliefs. As the Second Circuit observed in Sostre v. McGinnis, *supra* at 202–203:

"To sanction such punishment, even though in the judgment of prison officials the writings were 'inflammatory' and 'racist,' as in the instant case, would permit prison authorities to manipulate and crush thoughts under the guise of regulation. The intimidating threat of future similar punishment would chill a wide range of prisoner expression, not limited to that expression which Follette might in fact deem dangerous enough to discipline. The danger of undetected discriminatory punishment of ideas is particularly acute in the absence of statutory standards to guide the exercise of Follette's discretion."

See Howard v. Smyth, 365 F.2d 428, 430–431 (4th Cir. 1966); Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). Whether this constitutional right of plaintiffs has been violated by defendants is, of course, a matter, among others, for the district court's consideration on remand.[7]

2. Plaintiffs further alleged that defendants have deprived them of rights guaranteed by the First and Fourteenth Amendments by unlawfully censoring and interfering with their mail. It is abundantly clear that the state prison authorities do not possess unfettered discretion to censor or restrict an inmate's mail in the name of preserving order, safety and discipline. See, *e. g.,* Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Owens v: Brierley, 452 F.2d 640 (3d Cir. 1971); Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971); Sostre v. McGinnis, 442 F.2d 178, 200–201 (2d Cir. 1971), and cases cited; Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968); Long v. Parker, 390 F.2d 816, 822 (3d Cir. 1968). The scope of the constitutional rights to which the plaintiffs were entitled in this area and the extent to which such rights may have been abridged by defendants are matters to be considered in the first instance by the district court on the basis of the facts which are developed on these issues.

3. Plaintiffs also alleged that they were subjected by defendants to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments, by their confinement in punitive or administrative segregation, in which they were allegedly "not permitted out of their cells for any period

---

7. The Supreme Court has recently held that there is no distinction between personal liberties and property rights with respect to jurisdiction under 28 U.S.C. § 1343(3), explicitly rejecting the Second Circuit's approach in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), which rested upon Mr. Justice Stone's concurring opinion in Hague v. C.I.O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423. See Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

of time, . . . deprived of personal belongings, visits, and other rights afforded the general prison population." Complaint, ¶ 39. We note that although many federal courts have declared that commitment to solitary confinement does not, in itself, violate the Eighth Amendment,[8] certain particular practices in such confinement have been found to constitute cruel and unusual punishment. See, e. g., Holt v. Sarver, 442 F.2d 304 (8th Cir. 1971), aff'g 309 F.Supp. 362 (E.D.Ark.1970) (Arkansas State Penitentiary System involving a trustee system, confinement of large numbers of men in open barracks, bad conditions in isolation cells, and the absence of a meaningful rehabilitation program held cruel and unusual punishment); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967) (confinement in dirty cell encrusted with human excretion without clothing or rudimentary hygienic implements under threat of beatings held cruel and unusual punishment); Sinclair v. Henderson, 331 F. Supp. 1123 (E.D.La.1971), after hearing on remand, 435 F.2d 125 (5th Cir. 1970) (confinement of prisoners in cell for all but 15 minutes per day without opportunity for regular outdoor exercise constitutes cruel and unusual punishment); Knuckles v. Prasse, 302 F.Supp. 1036 (E.D.Pa.1969), aff'd, 435 F.2d 1255 (3d Cir. 1970) (confinement of two prisoners for 2½ days to cell with no windows or artificial light, a single bed, no clothing or toilet articles, and a malfunctioning toilet held cruel and unusual punishment); cf. Landman v. Peyton, 370 F.2d 135, 141 (4th Cir. 1966) ("Where the lack of effective supervisory procedures exposes men to the capricious imposition of added punishment, due process and Eighth Amendment questions inevitably arise.") We agree with the district court that the plaintiffs' allegations on this issue do not clearly present the extreme type of situation required to establish an Eighth Amendment violation. Since this case is to be remanded to the district court for further proceedings, we see no good reason to prevent the plaintiffs from presenting evidence on this issue if they choose to do so.

 4. Finally, plaintiffs alleged that their rights to due process guaranteed by the Sixth and Fourteenth Amendments were violated by their transfer to other prisons without hearings or notice of the charges against them. Based on the allegations of the complaint, we find no merit to this argument, since we agree with the district court that a state prisoner has no constitutional right to remain in any particular prison. See Hanvey v. Pinto, 441 F.2d 1154 (3d Cir. 1971); Bundy v. Cannon, 328 F.Supp. 165, 173 (D.Md. 1971).

The district court order of June 21, 1971, will be reversed and the case remanded for proceedings consistent with this opinion.

Chief Judge SEITZ concurs in the result because he believes that the important legal issues here presented should be decided on the basis of a fully developed record.

---

8. See, e. g., Sostre v. McGinnis, *supra*, 442 F.2d at 192 and cases cited; Bundy v. Cannon, 328 F.Supp. 165, 171 (D.Md. 1971), and cases cited.