EDWIN CALLWOOD, ET AL., Petitioners

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Respondent

Civil No. 74-665

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 22, 1975

JAMES L. HYMES, III, ESQ., St. Thomas, V.I., *for petitioners*

JAMES N. VANDAM, ESQ., Assistant Attorney General, St. Thomas, V.I., *for respondent*

CHRISTIAN, *Chief Judge*

### MEMORANDUM AND ORDER

Petitioners are seeking a Writ of Habeas Corpus and Order permanently enjoining their transfer from Richmond to Fort Christian or, especially, a stateside penal facility. Their claim is essentially that a disciplinary transfer without either notice or hearing violates due process. The respondent (Government) has moved to dismiss on the ground that they have failed to state a claim on which relief can be granted. Petitioners, in addition to contesting the motion, have filed a motion for production of certain documents.

The Government has been at great pains to point out that the Virgin Islands provision authorizing the Commissioner of Public Safety to place prisoners at his discretion (5 V.I.C. § 4501) is derived explicitly from 18 U.S.C. § 4082, and should thus be interpreted as broadly as that section has been. Petitioners do not dispute the Commissioner's authority; their only contention is that in exercising that authority he is bound to observe at least minimum due process standards. The question thus becomes one of whether petitioners have a right or interest which calls into play the concept of due process and, if so, just what standard of due process the procedures must meet.

At the outset, it should be noted that motions to dismiss a claim under Rule 12(b)(6) are examined strictly.

A complaint may be dismissed on motion if clearly without any merit, and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim. But a claim should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 12 A Moore's Federal Practice Paragraph 12.08 at 2271–74 (1968).

This standard has been applied by the Supreme Court in prisoners' civil rights actions. In Haines v. Kerner, 404 U.S. 519 (1972), the Court said:

Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. 404 U.S. at 520.

Haines was a case in which the petition was drafted by the prisoner pro se, and the Court noted the additional leniency with which pro se documents are viewed. The Third Circuit, however, has specifically followed the rule laid out in Haines in Gray v. Creamer, 465 F.2d 179 (3rd Cir. 1972), a case in which all documents were drawn up by the attorney who represented the petitioner. The Court noted that the policy against summary granting of such motions was sound, and observed that there should be dismissal only where the complaint as filed is "broad and conclusory", failing to state facts in support of its conclusions (see e.g., Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967)) or if in "taking as true all the allegations in the complaint and drawing the inferences most favorable to the plaintiffs, it appear(s) beyond doubt that plaintiffs (are) entitled to no relief." Gray v. Creamer, supra, 465 F.2d at 182. Thus, both an examination of the facts alleged and the applicable law are necessary.

Petitioners' allegations are essentially that they are being transferred because (a) they have been cooperating with the authorities in charge of the recent investigation into corruption at the Richmond Penitentiary; (b) they have been instrumental in creating and expanding new rehabilitative, educational and recreational activities at the prison for the benefit of the inmates. They also state that they were transferred from Richmond to Fort Christian in transit to an ultimate move to a stateside institution. They are currently detained at Fort Christian pursuant to an Order of this Court enjoining further movement until disposition of this action. All of the above transfers, both proposed and actual, were accomplished with neither prior notice nor hearing as to the reasons for the transfers.

It is now well established that incarceration does not mean that prisoners have no constitutional rights. Courts have held that prisoners too, are entitled to the benefits of the Equal Protection clause of the Fourteenth Amendment. Lee v. Washington, 390 U.S. 333 (1968). As put by our own circuit,

Courts for years had declined to interfere with prison procedures. Recognition of the important rights at stake in the prison environment has led recently to a much more activist judicial tone. Prevention of arbitrary prison procedures which unduly deprive inmates of important rights is now recognized; the handsoff policy has been abandoned. When important rights are at stake, courts should not be reluctant to protect them. Braxton v. Carlson, 483 F.2d 933, 942 (3rd Cir. 1973).

If the sole issue here were the validity of the transfer from Richmond to Fort Christian, the Government's motion would be well taken and should be granted summarily. This is so not only because a distinction has long been drawn between intra-state and inter-state transfers, the former being traditionally accorded less scrutiny by the courts, Gomes v. Travisono, 490 F.2d 1209 (1st Cir. 1973),

vacated and remanded 42 U.S.L.W. 3710 (July 9, 1974); United States ex-rel Arzonica v. Scheipe, 474 F.2d 720 (3rd Cir. 1973); United States ex-rel Stuart v. Yeager, 419 F.2d 126 (3rd Cir. 1969), but more so because, as to transfer from one institution to another within the Territory, the section 4501 authority of the Commissioner of Public Safety must be deemed plain and unqualified. There are allegations in the petition, however, which solidly raise the issue of transferring the petitioners to institutions on the mainland, well beyond the Territory, and thus further examination is warranted.

Gomes v. Travisono, supra, is the broadest case bestowing due process protection in out of state disciplinary or administrative transfers. In that case the First Circuit held that, at a minimum, prior notice and a hearing were required before a prisoner could be moved. This case was remanded to the court by the Supreme Court, however, for further consideration in light of its decision in Wolff v. McDonnell, 42 U.S.L.W. 5190 (June 25, 1974). Wolff dealt with deprivation of good time credits, not prisoner transfers. Moreover, its exclusive concern was with certain rules and regulations promulgated by the Nebraska Treatment and Corrections Act. The Government argues that because the Nebraska Act statutorily gave prisoners the right to good time credits, which could only be withdrawn in the case of flagrant misconduct (and that the court held that some kind of hearing was necessary to determine whether the misconduct was in fact serious), the prisoners there had an interest in their liberty given "substance" by the statute which the instant petitioners do not possess.

It is true that in the case sub judice there is no "right" in terms of a statute as in Wolff, nor "liberty" such as that involved in the parole and probation revocation cases which were discussed in Wolff, Morrissey v. Brewer, 408 U.S. 471 (1972) (parole revocation); Gagnon v. Scarpelli, 411 U.S.

778 (1973) (probation revocation). Nonetheless, the Third Circuit, in deciding whether or not minimum due process applies to a given area in the prison context, seems to have formulated a test of "substantial punishment" as propounded in Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971), rather than focusing on any narrow "interest." If, as petitioners here allege, they are being punished for their prison activities which do not from the pleadings appear to constitute misconduct, were the prison administration to choose the retribution of solitary confinement as a means of selective punishment rather than transfer, they would be obligated under both Third Circuit and Supreme Court precedent to provide some modicum of due process. It appears manifestly unfair that the Commissioner should be able to achieve a goal (punishment), through an only arguably proper procedure (transfer without notice and a hearing), which he could not effectuate were he to impose discipline here at home.

Granted, a state prisoner has no constitutional right to remain in any particular prison. Gray v. Creamer, supra. However, the cases cited in Creamer for this proposition do not really seem to stand for that general principle at all, and may render the enunciation mere dictum. (Nor was the principle essential to the holding in Creamer itself). Hanvey v. Pinto, 441 F.2d 1154 (3rd Cir. 1971), dealt with moving a prisoner from one wing in a prison to another wing *in the same institution*, the difference being that the opportunity to earn good time credits was less in the new wing than in the old. As in Bundy v. Cannon, 328 F.Supp. 165 (D. Md. 1971), what the court actually said was:

A prisoner has no vested right to be assigned to or to remain in a medium security or maximum security institution. The Division of Correction has the right to transfer prisoners from one institution to another, whether to a higher, equal or lower security status, for administrative, therapeutic, adjustment or other reason, without the need for a hearing under those procedures.

361

Transfers from one institution to segregated confinement in another institution should be treated during a classification period of reasonable length, on the same basis as a change from non-segregated to segregated status within an institution, i.e. requiring the minimum due process safeguards, including notice and a hearing before a "relatively objective and impartial tribunal". 328 F.Supp. at 173.

■ That transfer to another prison may be accomplished for a variety of reasons, most of them wholly legitimate interests of the State is, and must be recognized. Petitioners before us claim that theirs is for purely punitive reasons, as an attempt on the part of the prison bureaucracy to punish them for certain activities while at Richmond. These activities include initiating and organizing certain rehabilitative and educational programs for prisoners, and a prisoners' organization. Creamer dealt with the punitive measure of imposing solitary confinement, and Judge Van Dusen there held that "the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing do not, absent unusual circumstances not evident in the pleadings, meet minimal due process requirements." 465 F.2d at 185. Counsel for petitioners here argue that by being removed to Fort Christian and, in the long run, to the States, petitioners are being segregated from the general prison population, an argument I consider non-meritorious. I do think, however, that despite the fact that they have no constitutional right to stay in any particular Virgin Islands facility, the transfer of these prisoners to the mainland, particularly if for the reasons alleged in their petition, might constitute substantial punishment in terms of the following Creamer excerpt.

. This decision is consistent with a great number of federal court decisions indicating that the Fourteenth Amendment to the United States Constitution requires that certain safeguards accompany the

imposition by state prison authorities of *substantial punishment.* 465 F. at 185 (emphasis supplied).

As I read Wolff, and view the Supreme Court's remand of Gomes, I see nothing which compels dismissal of the pending petition. I am fully aware of authority in this jurisdiction which holds squarely in the Government's favor. Ruiz v. Tonkin, Civil No. 177/1973 (D.V.I. July 23, 1973) (appeal docketed) and Bennett v. Waite, Civil No. 251/1972 (D.V.I. January 29, 1974) specifically rejected the claimed necessity of notice and hearing when the Commissioner of Public Safety transfers a prisoner from a local institution to one in the States. These decisions antedate Wolff, and the opinion in Ruiz acknowledged the contrary holding in Gomes but declared it to be of limited application, if not against the weight of authority:

> I believe this decision (Gomes) should be read on its facts as limited to the special prison administrative and disciplinary rules existing in Rhode Island . . . and not as establishing due process hearing requirements contrary to the authority above. In any event, I believe that the transfer of a prisoner, while perhaps an inconvenience, does not affect those "core values of unqualified liberty" so as to implicate due process protection. Ruiz v. Tonkin at p. 2, citing Morrissey v. Brewer, supra, the parole revocation case.

██ In neither of the two cases coming out of this district do we have, in the opinion or order, a factual account of the alleged reasons motivating the transfer, nor the grounds on which the challenges were based other than that the move was to an institution in the United States. It may well be that on the above broad language, reasons and challenges would make no difference. However, it does seem to me that the prospect of substantial punishment (and I regard a disciplinary transfer away from one's home, one's relatives, community to which one must return, and to the rigors of unaccustomed climate conditions to be simply that) is sufficient on the facts as alleged in the case at bar to invoke at least, due process protection. After all "[t]he

363

touchstone of due process is protection of the individual against arbitrary action of government". Wolff v. McDonnell, 42 U.S.L.W. at 5196. As stated at the outset, the government relies heavily on the interpretation given 18 U.S.C. § 4082 and urges that since our section 4501, as the revisors note says, corresponds to 18 U.S.C. § 4082, the statute should receive like broad interpretation. This argument, however, overlooks the fact that V.I. § 4501 corresponds to U.S. § 4082(a) only. It does not take into account the precision with which 18 U.S.C. § 4082(b) sets out the authority of the Attorney General.

> The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility whether maintained by the Federal government or otherwise, and whether within or without the judicial district in which the person was confined, and may at any time transfer a person from one place of confinement to another.

Lacking a like broad grant of statutory authority, it may well be that we cannot properly weigh the corn of the Virgin Islands Commissioner of Public Safety in the bushel of the Attorney General of the United States. Moreover, a 1947 Opinion of the then Acting United States Attorney (at that time it will be remembered the Department of Law had not yet been created, and the United States District Attorney was the legal advisor to the Executive branch of the Government of the Virgin Islands), to the Government Secretary spoke to this very question in words that cast doubt on the government's present position. The Acting District Attorney was of the opinion that

> . . . I have found no local law which authorizes their (prisoners) release for the purpose of being transferred (to the Federal Bureau of Prisons).

> It is the opinion of this office that, in the absence of local legislation conferring power on some official to transfer prisoners, it would be necessary to obtain some sort of consent from the prisoners

364

themselves if the possibility of legal complications is to be minimized.

Despite the fact that the foregoing opinion was written well before the enactment of the present section 4501, I hesitate to say that the mere incorporation or adoption of a portion of the Federal statute into our law will enable the segment taken over to carry the full weight of the entire Federal law. All things considered, as to law and fact, it would seem that the government should not prevail on its motion to dismiss.

■ With respect to the motion of petitioners for the production of documents, it would appear that there has been no extra-judicial request for the production of those documents as Rule 37 of the Federal Rules of Civil Procedure contemplate. In the absence of a request followed by denial by the party to whom the request is addressed, I believe I am not required to consider a motion to compel production prematurely. It will be time enough to deal with such a motion if the request is made of the Commissioner of Public Safety and he fails or refuses to accede.

### ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of defendant to dismiss the petition be, and the same is hereby denied.

FURTHER ORDERED that the motion of the petitioners to compel production of documents be, and the same is hereby denied.