UNITED STATES of America ex rel. Edward LEWIS

v.

Robert L. JOHNSON.

Civ. A. No. 73–132.

United States District Court, E. D. Pennsylvania.

Feb. 20, 1975.

Professor Howard Lesnick, Professor Ralph S. Spritzer, Thomas Donovan, Indigent Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

Michael Minkin, Asst. Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

On September 28, 1974, this Court entered an Order holding that the prisoner plaintiff's Fourteenth Amendment rights had been violated when he was placed in solitary confinement without a hearing. However, recovery against defendant Superintendent Johnson was denied because Johnson, in iso-

lating plaintiff, acted in the reasonable and good faith belief that his actions were constitutional. Plaintiff now contends that the Court should reconsider this Order, allegedly because certain state regulations governing the isolation of prisoners, which were in effect when defendant placed plaintiff in solitary confinement, negate any finding of reasonable belief or good faith on defendant's part. Plaintiff states that these regulations were "not unambiguously produced at trial", and asks this Court to take judicial notice of them. Defendant does not dispute that these regulations are subject to judicial notice, but opposes reconsideration on the grounds that they merely tend to impeach defendant's testimony at trial, and are thus not proper grounds for a new determination of defendant's liability. We take judicial notice of the regulations and, for the reasons discussed below, find that they do not conflict with our finding that defendant reasonably and in good faith believed that his acts were constitutional.

Plaintiff was first placed in solitary confinement on November 2, 1972, immediately following an altercation with other inmates in which he was stabbed, and, with the exception of a one week interval, remained in solitary until December 1, 1972, when he pled guilty to assaulting another inmate. The regulations upon which plaintiff bases his petition for reconsideration took effect on November 1, 1972. These regulations, with the heading "BC–ADM 801", were prepared by the Bureau of Corrections of the Commonwealth of Pennsylvania, and set forth the procedures to be followed in handling prisoner misconduct in all Commonwealth prisons.[1] The regulations provide that, except in emergency situations, a prisoner suspected of major misconduct is entitled to a hearing before any penalties may be imposed upon him. The regulations assure a prisoner written notice of the charges against him prior to the hearing, assist-

---

1. These regulations are printed in their entirety as the appendix to the Court's decision in Biagiarelli v. Sielaff, 483 F.2d 508 (3rd Cir. 1973).

ance from prison inmates or staff in preparing his defense, and the right to present evidence, including the testimony of witnesses, in his behalf at the hearing. These regulations were adopted to bring prison disciplinary practice in line with the Third Circuit's mandate in Gray v. Creamer, 465 F.2d 179 (August 14, 1972), that segregation of a prisoner from the general prison population without a hearing, absent unusual circumstances, violates due process. While neither *Gray* nor the Bureau's regulations specifically deal with the victim of an attack who is segregated to protect both him and others against reprisals, defendant Johnson testified that the regulations cover all situations in which a prisoner is placed in solitary confinement.

In the present case plaintiff remained in solitary confinement for approximately one month without any hearing. We have already declared that this represented a violation of due process. (Memorandum and Order dated September 28, 1974). However, we also declared that in light of the "unusual" circumstances exception enunciated in *Gray*, it was not unreasonable for defendant Johnson to believe that confining plaintiff in solitary for a month was constitutional. The Corrections Bureau's regulations merely codify *Gray*, including its unusual circumstances exception; they provide that "a resident who poses a clear and present danger to himself or others may be placed in Administrative Custody or the Behavior Adjustment Unit on an emergency basis upon approval of the officer in charge pending [a hearing]." The regulations set no deadline for holding a hearing when a prisoner is held in emergency segregation. In fact, as the Third Circuit points out disapprovingly

in *Biagiarelli*, cited *supra*, the Bureau's regulations permit a prisoner to be maintained in administrative segregation, as was plaintiff herein, for thirty days without a hearing even in the absence of an emergency. Thus it is difficult to see how these regulations could form the basis of defendant's liability.

At the time he placed plaintiff in segregation status defendant's only guidance as to the scope or duration of the *Gray* unusual circumstances exception was footnote #6 in *Gray* which stated:

> "This is not to say, of course, that this notice or hearing must in all cases precede the transfer to solitary confinement; in some cases, as, for example, during a prison riot, notice and hearing must be delayed a reasonable period of time." 465 F.2d at 185.

The exception has received greater amplification in decisions which followed the defendant's actions herein.[2] However, given the undefined scope of the unusual circumstances exception, and given the fact that plaintiff remained in solitary confinement less than one month before a hearing and that a state police investigation into the disturbance which led to plaintiff's isolation was proceeding during this period, defendant could, and in fact did, believe that the emergency circumstances which required plaintiff's segregation had not abated before the December 1st hearing.

### ·ORDER

And now, to wit, this 20th day of February, 1975, the motion of plaintiff for a reconsideration of this Court's Order and Judgment dated September 28, 1974, is hereby denied.

And it is so ordered.

---

2. In Biagiarelli v. Sielaff, cited in Fn. 1, *supra*, the Court declared that the unusual circumstances exception no longer justified isolating a prisoner without a hearing when "the threat to the institution subsided . . . ." 483 F.2d at 512.