**John BRAXTON et al., Plaintiffs,**

**v.**

**Norman CARLSON et al., Defendants.**

**Civ. A. No. 71-331.**

United States District Court,
M. D. Pennsylvania.

April 7, 1972.

J. Thomas Menaker, Harrisburg, Pa., David Rudovsky, Louis M. Natali, Jr., Brian E. Appel, Segal, Appel & Natali, Philadelphia, Pa., Stanley A. Bass, New York City, for plaintiffs.

S. John Cottone, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

The Plaintiffs are convicts in the federal prison system. The question before the Court is whether the Plaintiffs have been deprived of their constitutional rights at prison disciplinary hearings.

The incidents which resulted in the disciplinary hearings in this case occurred at the Allenwood Prison Camp, a part of the federal prison complex centered at Lewisburg, Pa. Prison officials had ordered the Plaintiff Mische transferred from the Allenwood Camp to segregation at the Lewisburg Penitentiary for a violation of camp rules. When a prison official attempted to drive Mische by truck from the camp administration office to Lewisburg, a large crowd of prisoners gathered and blocked the truck.

The prisoners seemed bent on a confrontation. The situation became ugly. In my view, the prisoners were on the very edge of a mutiny. The camp officials consulted among themselves and then announced to the crowd that Mische would not be moved to segregation at Lewisburg. Upon this retreat by the officials from the confrontation, the prison returned approximately to normal. A mutiny was averted by the cancellation of the order to move Mische.

The following day a large contingent of armed guards removed from the camp the Plaintiffs and other convicts who had blocked the truck.

The disciplinary hearings which are the subject of this action resulted in punishments for the prisoners who blocked the truck and to Mische for his prior violation of camp rules.

The Plaintiffs have brought this action in a court of equity without clean

hands. A prison mutiny is a vicious thing. Were the doctrine of clean hands applicable to this case, I would have dismissed the action summarily. However, there apparently is no authority for the application of that doctrine to a case such as this. Consequently, I will examine the Plaintiffs' contentions and treat them on their merits.

The Plaintiffs contend that at prison disciplinary hearings they are entitled to (1) adequate written notice of the charges, (2) a hearing before an impartial tribunal, (3) representation by private counsel or lay substitute, (4) confrontation with the witnesses against them, (5) cross-examination of such witnesses, (6) presentation of witnesses and evidence in their own behalf, (7) determination by the committee based on the relevant evidence, (8) written notice of the Committee's determination, and (9) notice of the right to appeal to the Warden.

Prisoners at the Allenwood prison camp are automatically entitled to what is known as "camp good time."[1] In brief, camp good time permits an inmate to be released at a date earlier than if he were serving his sentence at an institution having greater security. Camp good time is in addition to the somewhat similar good conduct time which all federal prisoners are entitled to earn by good conduct.

As a result of the disciplinary hearings, many of the Plaintiffs were dispatched to other prisons where they could not earn this camp good time and some of the Plaintiffs were imprisoned in segregation at various penal institutions.

The Bureau of Prisons is charged with "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(3). A threshhold question is the scope of judicial review of disciplinary hearings held by prison officials under this grant of authority. Some courts in this and other circuits have indicated that so long as the punishments imposed by prison officials are not cruel and unusual, courts may not properly interfere.[2] Other courts have held that they may determine whether convicts have been accorded procedural due process at disciplinary hearings.[3] As many of these latter courts have held, the test is that set forth in Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1969). There the Court stated:

"The extent to which procedural due process must be afforded the recipient is influenced by the extent to which

---

1. 18 U.S.C. § 4162.

2. Hanvey v. Pinto, 441 F.2d 1154 (3d Cir. 1971) (transfer of a state prisoner from one wing of a prison to another, the consequent change of prison jobs, and the consequent decrease in the prisoner's opportunity to earn good time credits, did not involve any federally protected rights); Ford v. Board of Managers of New Jersey' State Prison, 407 F.2d 937 (3d Cir. 1969); see Holland v. Ciccone, 386 F.2d 825 (8th Cir. 1967); Lawrence v. Willingham, 373 F.2d 731 (10th Cir. 1967); Glenn v. Ciccone, 370 F.2d 361 (8th Cir. 1966); Gurczynski v. Yeager, 339 F.2d 884 (3d Cir. 1964); Kelly v. Dowd, 140 F.2d 81 (7th Cir. 1944). It does not appear from these cases that the prisoner Plaintiffs claimed they were deprived of fair disciplinary hearings.

3. Sostre v. McGinnis, 442 F.2d 178, at 196 (2d Cir. 1971); Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1968); Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968); Urbano v. McCorkle, 334 F.Supp. 161 (D.N.J. 1971); Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971); Sinclair v. Henderson, 331 F.Supp. 1123 (E.D.La.1971); Clutchette v. Procunier, 328 F.Supp. 767 (N.D.Cal.1971); Bundy v. Cannon, 328 F.Supp. 165 (D.Md.1971); Meola v. Fitzpatrick, 322 F.Supp. 878, 886 (D. Mass., 1971). All of these cases were brought by state prisoners in federal courts. This present case is the first one dealing with the rights of federal prisoners at disciplinary hearings. The same principles apply to both classes of prisoners. Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947), (Frankfurter, J., concurring).

he may be 'condemned to suffer grievous loss,' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 [71 S.Ct. 624, 647, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."

What are the losses suffered by the Plaintiffs? The prison authorities placed a misconduct report relating to the incident in the file of each Plaintiff which will ultimately be transmitted to the Board of Parole if and when an application is made by the prisoner for parole. This misconduct report may reduce his chances for parole. Many of the Plaintiffs were transferred from Allenwood to higher security prisons where they cannot earn camp good time. Thus, they may well be incarcerated longer than if they had stayed at Allenwood. Several Plaintiffs had spent 2 months in punitive segregation at the time of the hearing in this court. This is separation from the general prison population but is not solitary confinement. It does involve the loss of certain privileges.

For purposes of this case I assume that these punishments constitute "grievous losses" as that phrase is used in Goldberg. Goldberg v. Kelly, 397 U. S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). Were the Plaintiffs given due process at their disciplinary hearings? If they were, the fact that they suffered these losses is beside the point.

Before the disciplinary committee acted

(1) Plaintiffs received adequate notice of the charges,

(2) Plaintiffs were informed of the substance of the evidence against them,

(3) Plaintiffs were given an opportunity to respond, and

(4) The Committee made a reasonable investigation into the facts.

▮ The charges were read to Plaintiffs several days prior to the hearings, pencil and paper were available at the reading thereof for use by Plaintiffs, and Plaintiffs were permitted to ask questions about the charges. The "nature of the charge" on the misconduct report so read to them included the reporting officer's version of the facts which constituted the basic evidence against them. At the hearing, the Committee listened to the inmates' version of the facts, examined the report of the investigating officer, and questioned witnesses. The Plaintiffs maintain that the opportunity to respond was not meaningful because they were not guaranteed that their testimony would not be used against them in subsequent criminal prosecutions. It is my opinion that the Plaintiffs were not entitled to the grant of any immunity, use or transactional, and in any event have not proven that their responses were chilled by fear of subsequent prosecutions.

Since Plaintiffs were given these rights, it is not necessary to decide whether they are constitutionally mandated. The balance of Plaintiffs' claimed rights fall into two classes: those as to which Plaintiffs have failed to sustain their burden of proof, and those which they have proven were denied to them.

▮ The rights claimed which fall in the first class are the rights to an impartial tribunal which confined its consideration to relevant evidence, and notice of the right to appeal to the warden. No accusing officer sat as a member of the tribunal. The Adjustment Committee at Lewisburg was composed of the Associate Warden of the main penitentiary at Lewisburg and other members of the prison staff. Unless the tribunal were to be composed of persons from outside the prison complex, the tribunal would appear to me to be as impartial as could reasonably be obtained. I am not prepared to direct that the Bureau of Prisons provide itinerant examiners or shift staff from one prison to another to conduct disciplinary hearings. The Plaintiffs failed to prove that the Committee's determination was based on irrelevant evidence, and in particular

failed to prove their contention that prison officials in the course of the disciplinary hearings considered letters written by the Plaintiffs to Congressmen and other governmental officials. There has been no proof that Plaintiffs were ignorant of their right to appeal to the Warden from the action of the disciplinary committee.

■ The balance of Plaintiffs' claimed rights are those which they have proven were denied to them. These are confrontation and cross-examination of witnesses, representation by counsel or lay substitutes, presentation of witnesses in their own behalf, written notice of the charge, and written notice of the Committee's determination. In my view these rights were not constitutionally due Plaintiffs. See Nolan v. Scafati, 306 F.Supp. 1, 4 (D.Mass.1969). I have reached this determination by balancing the inmate's interest in avoiding the losses against the prison's interest in summary adjudication. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1969), and by considering the value of each of these rights to an inmate at a disciplinary proceeding. Sostre v. McGinnis, supra, 442 F.2d at 196–197; see McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967). The prisons' interests in summary adjudication include: (1) minimization of the time which administrators, guards and other staff would be obliged to spend to prepare for and conduct hearings; and (2) speedy and certain punishment which is likely to act as a more effective deterrent. These interests weigh heavily against granting Plaintiffs the right to confront and cross-examine witnesses, to call available witnesses on their own behalf, and to be represented. A grant of the rights to call and cross-examine witnesses carries with it an invitation to the accused to intimidate such witnesses.

Written notice of the charge, while desirable, was not a necessity in light of the adequate notice of the charges which was provided and the opportunity given the inmate to copy the charge.

■ The assertion of Plaintiffs that they are entitled to written notification of the Committee's determination is of no merit. The Committee's determination was sufficiently apparent from the changes of custody and transfers which promptly followed the hearings.

It is my view that the Adjustment Committee's procedures satisfied the requirements of due process. Plaintiffs have failed to make out a case.