Lawrence MILLS et al.

v.

Robert LARSON, Turnkey, et al.

Civ. A. No. 44–72 Erie.

United States District Court,
W. D. Pennsylvania.

Aug. 25, 1972.

**64**

John Bernard Galus, Norman Watkins, Erie, Pa., for plaintiffs.

Will Schaaf, James McDonald, Alois Lubiejenski, Erie, Pa., for defendants.

## OPINION AND ORDER
## (MOTION TO DISMISS)

KNOX, District Judge.

This is another of the numerous civil rights actions filed by prisoners against the authorities of the institutions in which they are confined claiming various matters of mistreatment and deprivation of constitutional rights. This field of the law is fast developing and new decisions come down every month.

By the decision of the United States Supreme Court in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, (1972), we have been admonished not to dismiss such a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to re-

lief. This was previously the rule in this Circuit as laid down by our Court of Appeals in Mayberry v. Prasse, 449 F.2d 1266 (3d Cir. 1971). For this reason, this case will either have to go to trial or else have to wait until the facts have been fully developed so that it can be determined whether summary judgment should be entered. This, however, does not prevent us from considering certain of the points raised by the defendants and particularly the liability of certain of the individual defendants as to whom we have determined the complaint as to damages must be dismissed subject to possible amendment. It further appears that there may be grounds for Declaratory and Injunctive relief under the decision of our Court of Appeals in Gray v. Creamer, 465 F.2d 179 (3d Cir. 1972).

Defendants' Motion to Dismiss also urges that the complaint shows on its face that plaintiffs have not exhausted their remedies under state law. The simple answer to this is that under the Civil Rights Act, 42 U.S.C. § 1983, exhaustion of state remedies is not required as a prerequisite to an action in Federal Court. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed. 2d 418 (1971). In Wilwording where plaintiffs complained of living conditions and disciplinary measures in a state prison, the court said:

"Petitioners were therefore entitled to have their actions treated as claims for relief under the Civil Rights Acts, not subject, on the basis of their allegations, to exhaustion requirements. The remedy provided by these Acts 'is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.' Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, 503 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). State

prisoners are not held to any stricter standard of exhaustion than other civil rights plaintiffs."

See also Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971).

Incidentally, the alleged state remedies upon which defendants rely, to wit: Act of 1730, February 14, 1 Smith Laws 181 and Act of April 5, 1790, 2 Smith Laws 531, providing for complaints to "His majesties courts of record" or to judges of the Supreme Court or the judges of the Court of Quarter Sessions appear to have been partially repealed by the Appellate Jurisdiction Act of July 31, 1970, No. 223 and the Act of June 3, 1971, No. 6. (See notes to 61 Purdons Pa. Statutes, 451 and 452.)

■■ Defendants' Motion to Dismiss is apparently filed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, but under Haines v. Kerner, supra, we are not to dismiss a case of this type in toto until the testimony has been fully developed by deposition or otherwise and the case is in shape for Summary Judgment or until there has been a trial on the merits. While defendants have attached an affidavit of the Warden to the effect that conditions require beard and hair regulations in the prison because of the presence of lice and so forth, we are not disposed at this time under the provisions of Rule 12(b) to convert the motion into one for summary judgment because there has been inadequate opportunity for the parties to develop their evidence. At this time, we will consider only whether the allegations of the complaint are sufficient to state a possible cause of action against one or more defendants. We thus do not now reach the question whether a partial summary judgment can be granted which action is generally reserved for cases where there are distinct and separate claims and not where there is but a single claim. Shultz v. United Steelworkers, 319 F. Supp. 1172 (W.D.Pa.1970); RePass v. Vreeland, 357 F.2d 801 (3d Cir. 1966).

We will, however, express our opinion as to the standing of the plaintiffs to press the various issues raised by them and also dispose of the Motions to Dismiss with respect to various individual defendants.

(1) *Confinement to Solitary As Cruel and Unusual Punishment and Need For Hearing.*

■ As to this, it is apparent that under Haines v. Kerner we will have to have a hearing or at least have the facts fully developed by deposition or otherwise. It must appear, however, that the confinement was a barbarous act shocking to the conscience. Marnin v. Pinto, 463 F.2d 583 (3d Cir. 1972). See also our decision in Biagiarelli v. Sielaff, 349 F.Supp. 916, Civil Action No. 71–1093, 1972, as to the necessity of a due process hearing for confinement to solitary. We have just now held that such hearing may be required to a limited extent as the result of the decision in Gray v. Creamer, supra. In this decision, handed down since argument of this motion to dismiss, the court reversed the decision of our court in Gray v. Creamer, 329 F.Supp. 418 (W.D.Pa.1971) holding there was no constitutional right to a due process hearing before confinement in solitary and said:

"But we do hold that the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing *does not, absent unusual circumstances not evident in the pleadings, meet minimal due process requirements.* See Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971):

"If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner *were con-*

*fronted with the accusation, informed of the evidence against him. . . . and afforded a reasonable opportunity to explain his actions."*

"This decision is consistent with a great number of federal court decisions indicating that the Fourteenth Amendment to the United States Constitution requires that certain safeguards accompany the imposition by state prison authorities of substantial punishment."

See also Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971); Wright v. McMann, 460 F.2d 126 (2d Cir. 1972) the recent decision of Judge Muir in the Middle District; Braxton v. Carlson, 340 F. Supp. 999 (M.D.Pa.1972) and Urbano v. McCorkle, 334 F.Supp. 161 (D.C.N.J. 1971).

(2) *Hair, Beard and Mustache Restrictions.*

■ As to this question, we will certainly have to have an evidentiary hearing or motion for summary judgment after all the facts are developed to determine whether there is any reasonable basis for such regulations.

(3) *Deprivation of Medication.*

■ This obviously demands a hearing or full development of the evidence for summary judgment to determine if this deprivation amounted to cruel and unusual punishment.

(4) *Assault by Defendant Robert Larson, Turnkey.*

■ This likewise will require a full evidentiary hearing or development of the facts for summary judgment to determine just what transpired and whether the assault, if it occurred, was made under the color of state law and hence is subject to redress under the Civil Rights Act.

(5) *Liability of the Warden and the Members of the Board of Inspectors of the Erie County Prison.*

We must now consider the liability of the defendant Warden and the Board of Inspectors of the Erie County Prison, including four Judges, the District Attorney, the Sheriff, three County Commissioners and the County Controller, under the Doctrine of Respondeat Superior for damages caused by any misconduct by the Turnkey or Warden in operation of the prison. These officials are constituted the board in which "and the officers appointed by it, the safekeeping, discipline, and employment of prisoners, and the government and management of said institution, shall be exclusively vested", 61 Purdons Pa. Statutes 408 (Act May 16, 1921, P.L. 579 as amended). The warden is subject to removal by the board as are his subordinates. 61 Purdons P.S. 411, Comm. ex rel. Bunch v. Beattie, 364 Pa. 752, 73 A.2d 664 (1950).

While there are certain lower court cases indicating that the Doctrine of Respondeat Superior does apply in full force and vigor to civil rights actions under 42 U.S.C. § 1983 (See Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970), nevertheless in every one of the cases we have examined there has been some participation, knowledge of, approval or active negligence on the part of the public official to be held responsible. In Hill v. Toll, supra, the detention center official witnessed the beating, stood by and did not come to the plaintiff's aid. In Anderson v. Nosser, 438 F.2d 183 (5th Cir. 1971) the Chief of Police and police officers were held liable for the violation of civil rights but a Mayor and Commissioner of the Highway Safety Patrol were held not liable in the absence of any evidence of participation in or knowledge of the abuse.

Again, in Carter v. Carlson, 447 F.2d 358 (D.C.Cir. 1971) the Police Chief and Precinct Captain were held liable for negligent breach of duty and in Nixa v. Hayes, 55 F.R.D. 40 (E.D.Wis.1972) the complaint alleging that police officers were acting pursuant to orders and directives of the Chief of Police and the acts were committed with the knowledge

and approval of the Mayor was held sufficient to withstand a Motion to Dismiss.

The question is how far up the line of control or potential control do you impose liability upon public officials for violation of civil rights by subordinates? Is the Governor of Pennsylvania to be held responsible for mistreatment of a prisoner in a prison when he has no notice or knowledge of the mistreatment although he may have the power to remove the Commissioner of Corrections who in turn may remove the warden, who in turn may remove the prison guards?

We must remember that the warden and the turnkey are not the employees of the board of inspectors of the prison. Exhaustive research on the liability of officials for acts of their employees was performed by the Supreme Court of Pennsylvania in Commonwealth v. Roberts, 392 Pa. 572, 141 A.2d 393, holding that a prothonotary is not responsible for the acts of his official subordinates. The court pointed out that the employees in his office are not employed in his private affairs and the relationship of master and servant does not exist between the public official and official subordinates. Subordinates in our case are the employees of Erie County and not the Board of Inspectors of the County Prison.

■ While there is a paucity of authority in this area, nevertheless we have concluded that under the rules of Respondeat Superior as applied in civil rights cases, we have no basis for holding the Members of the Board of Inspectors of the County Prison for damages resulting from the acts allegedly committed in this case. There is no allegation whatsoever in the complaint that these officials participated in the alleged misconduct of the turnkey or that they had any knowledge of these acts or were negligent in any respect. These defendants will also have to remain on the record in case it is determined that de-claratory or injunctive relief is required under Gray v. Creamer, supra, as to due process hearings before confinement in solitary. Before entering a final dismissal order, we will however give plaintiffs 20 days in which to amend if they have any evidence of actual knowledge, participation or approval of these acts by the Members of the Board of Inspectors of the Erie County Prison.

Examination of the cases reveals, however, that we cannot release the warden from the case on this basis. Police chiefs and precinct captains we note have generally been held liable in civil rights actions for acts of subordinate police officers. We will have to see what the evidence develops as to any knowledge of, approval, participation, failure to control, and so forth, on the part of the warden and we will not grant the motion to dismiss as to him, or of course, as to Turnkey Larson.

### (6) *Judicial Immunity of Judges and District Attorney.*

■ There is no question that the judges of the Court of Common Pleas of Erie County and the District Attorney are immune from a suit for damages in a civil rights action for acts committed within their judicial jurisdiction. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1872); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). We have held, however, that these officials are not, under the present pleadings, liable in this case for damages under the Doctrine of Respondeat Superior and this makes further discussion of immunity from suits for damages unnecessary.

With respect to declaratory and injunctive relief which we may have to grant as a result of the Circuit's decision of August 14, 1972 in Gray v. Creamer, supra, we have a different situation.

■ The Doctrine of Judicial Immunity from damage suits does not extend to suits seeking declaratory and injunc-

tive relief. Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N.Y.1971); Rakes v. Coleman, 318 F.Supp. 181 (E.D.Va. 1970); Bramlett v. Peterson, 307 F. Supp. 1311 (M.D.Fla.1969); Law Students Civil Rights Research Council v. Wadmond, 299 F.Supp. 117 (3 Judge Court S.D.N.Y., opinion by Friendly, Circuit Judge 1969.)

Therefore, even if the Doctrine of Judicial Immunity applies to state judges and the District Attorney functioning as the Board of Prison Inspectors, this would not prevent the issuance of declaratory and injunctive relief against them if the same is required to carry out the Circuit's August 14, 1972, decision in Gray v. Creamer, supra.

In Biagiarelli v. Sielaff, 349 F.Supp. 913, CA71–1093, decided in this court August 23, 1972, we held that under Gray v. Creamer and Urbano v. McCorkle, 334 F.Supp. 161 (D.C.N.J.1971); Braxton v. Carlson, 340 F.Supp. 999 (M.D.Pa.1972); Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971) and Wright v. McMann, 460 F.2d 126 (2d Cir. 1972) minimum due process required that before a prisoner was placed in solitary or other form of administrative or punitive segregation, he was entitled to the following: (1) adequate notice of charges, (2) information as to the substance of evidence against him, and (3) an opportunity to respond. We held, however, that we would extend the requirements no further.

## ORDER

And now, to wit, August 24, 1972, upon consideration of defendants' Motion to Dismiss,

It is ordered that the same be and hereby is dismissed for failure to state a cause of action upon which relief can be granted as to defendants Edward Carney, Lindley McClelland, Fred Anthony, George Levin, R. Gordon Kennedy, Andrew Hanisek, William Hill, Louis Kzymek, Leo Weir and A. J. Gehrlein, Members of the Board of Inspectors of Erie County Prison, as to damages only unless an amendment in accordance with the foregoing opinion, alleging additional facts showing liability for damages on the part of said defendants is filed within 20 days from the date of this order.

It is further ordered that said motion in all other respects be and the same hereby is denied and the defendants are directed to answer within 20 days from the date of this order.