Peter Joseph **BIAGIARELLI**

v.

**Allyn R. SIELAFF and Joseph R. Brierley, Gilbert Walters, Added Defendant.**

**Civ. A. No. 71–1093.**

United States District Court, W. D. Pennsylvania.

Aug. 23, 1972.

Decree Sept. 13, 1972.

Michael Donadee, Pittsburgh, Pa., for plaintiff.

Frederick N. Frank, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

KNOX, District Judge.

In this prisoner's civil rights action brought under the Civil Rights Act, 42 U.S.C. § 1983, we have afforded the plaintiff a full non jury trial in court after having appointed counsel for him. Counsel has pressed his client's rights vigorously and ably and deserves the sincere thanks of the court.

Plaintiff seeks declaratory and injunctive relief with respect to his confinement in administrative segregation or "solitary" and deprivation of access to the courts. He claims that his confinement in segregation was without a due process hearing and that the same is required by law and further that the same constituted cruel and unusual punishment.

We have heard both the plaintiff and the prison officials as witnesses in this case. It appears that the plaintiff is confined in the Western Pennsylvania Correctional Institution at Pittsburgh under a sentence of life imprisonment for first degree murder. On October 19, 1971, he claims he was in his cell when officers and guards came and took him to the "home block" or solitary without any warning and gave no reason for his confinement there although he was later told he was being held on "suspicion".

He states that he was held in the home block until December 24 and was then placed in the security range for 35 days. He states he later was given a hearing at the home block but no witnesses were produced against him. He says he was only allowed out 20 minutes per day and that the place was infested with rats, mice and roaches. His further claim is that when he was taken to the home block all his legal materials were taken from him and not restored for some period of time, that he had a Post Conviction Hearing Act Petition ready to be filed in the state courts and this also was taken from him.

The prison authorities presented evidence that an emergency situation existed on October 19, 1971. They were unable to give him any hearing because they had received information of a conspiracy for a prison break in which plaintiff was involved from reliable sources, to wit: the Chief of Police of the City of Pittsburgh. In their judgment this emergency situation justified placing the plaintiff in solitary immediately for reasons of security. This does not explain, however, why a hearing was not later held.

 We find from the evidence that there was no substantial interference with plaintiff's access to the courts since his legal materials which were held up temporarily while there was a search of his cell were shortly thereafter returned to him. We have the fact that the complaint in this case was filed on November 18, 1971, and further Judge Fiok of the Court of Common Pleas of Allegheny County has stated that the Post Conviction Hearing Act Petition was received on October 26, 1971, indicating that plaintiff had full access to the courts during the time he was in

segregation. We further find that plaintiff has not proved by a preponderance of the evidence that his quarters in segregation were infested with rats, mice and roaches. This was denied by the prison authorities and there is no evidence of it other than the plaintiff's bare word that at times this condition existed.

This brings us to plaintiff's main contention that under the circumstances of this case he was and is entitled to a due process hearing before being placed in administrative segregation or solitary.

We start with the basic premise that plaintiff is duly held as a prisoner in a state correctional institution and therefore does not have the usual freedoms of one who is not so incarcerated. In the recent decision of the Court of Appeals for our Circuit in Wilson v. Prasse, 463 F.2d 109 (3d Cir. 1972) this instruction to the jury was approved:

"Now, it appears in this case that plaintiff is a prisoner duly incarcerated in a state correctional institution. Now, this very fact means that he is deprived of his liberty to a great extent. This is why he was sent there. In such a case the prison authorities have the right to make reasonable rules and regulations for the operation of the prison, and they have wide discretion in the matters of prison operation and discipline."

The court further quoted at length from its prior decision in Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970):

"Stated simply, a man in jail is not a free man; the denial of his right to drink freely from the cup of freedom is the very hypostasis of confinement.
. . .

". . . [The objective of incarceration] is to circumscribe certain activities and opportunities not only available in, but also characteristic of, an open societal setting. And, un-

pleasant as it is to contemplate the physical restrictions of a 'settled environment', we must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security.

"To determine, with precision, those rights which follow an inmate into prison involves a process of weighing and balancing conflicting interests. The desire that there be a maximum opportunity for the exercise of rights and privileges may often collide with the practical necessities of managing and administering a complicated penal community. The task of striking the proper balance between these conflicting interests is generally within the competence of the prison authorities. Thus, the federal courts have been understandably reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials."

We realize that this is a fast developing field of law and large numbers of these cases are being filed by prisoners. We are admonished by the United States Supreme Court and by the decisions in our own Circuit to permit full development of the facts in each of these cases and we have done so.

With respect to cruel and unusual punishment, we have the recent decision of our Circuit in Marnin v. Pinto, 463 F.2d 583 (3d Cir. 1972) in which we were again cautioned "that there should be federal court intervention into state prison affairs only under *extreme provocation*. Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971)" (Emphasis added). It was held that to constitute cruel and unusual punishment there must be something in the nature of " 'conduct that shocks the conscience' or a 'barbarous act' ". We find nothing of this nature in this case.

We must always keep in mind that in this type of case, there are two questions:

(1) Did the plaintiff suffer cruel and unusual punishment? We find he did not and there is no reasonable expectation of the same in the future.

(2) To what extent would the requirements of due process require a hearing of some sort before he is committed to segregation?

While the need for due process hearing prior to confinement to solitary or other form of segregation was not clear from the decisions in our Circuit and it had previously been held in this District in Gray v. Creamer, 329 F.Supp. 418 (W.D.Pa.1971) that there was no constitutional right to a due process hearing prior to confinement in solitary or in other segregation, nevertheless this decision was reversed by the Court of Appeals for our Circuit in Gray v. Creamer, 465 F.2d 179 (filed August 14, 1972). In that case the Court of Appeals stated the prisoners were put in either punitive segregation or segregation and never charged with violation of prison regulations or given a hearing. The court cited with approval Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968) where Mr. Justice Blackmun, while a Circuit Judge, indicated there should be a hearing and also indicated that a class action was appropriate in such proceedings. (For similar approval see Wilwording v. Swenson, 404 U.S. 249, 92 S. Ct. 407, 30 L.Ed.2d 418 (1971). The Court of Appeals did not precisely determine to what extent due process was due but the court did say:

> "But we do hold that the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing *does not, absent unusual circumstances not evident in the pleadings, meet minimal due process requirements.* See Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971):

> "If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner *were confronted with the accusation, informed of the evidence against him, . . . and afforded a reasonable opportunity to explain his actions.*"

> "This decision is consistent with a great number of federal court decisions indicating that the Fourteenth Amendment to the United States Constitution requires that certain safeguards accompany the imposition by state prison authorities of substantial punishment." (Emphasis added.)

The court further cited numerous cases wherein other federal courts at both the District and Circuit levels had determined some sort of due process hearing must be given prior to confinement to solitary. See also Wright v. McMann, 460 F.2d 126 (2d Cir. 1972).

In Urbano v. McCorkle, 334 F.Supp. 161 (D.C.N.J.1971), Judge Kitchen held:

> "Individuals whose rights are affected directly through actions of state officials should be protected by due process to the extent that the rights of the individuals and interests of the government are balanced. This court is of the opinion that prisoners who are confined to administrative segregation for the good of the institution should be entitled to the same minimal due process that is already afforded prisoners who are confined to segregation for disciplinary infractions. Equal protection so requires. Minimal due process in this situation does not mean that a formal hearing or the right to counsel is a requirement. But it does mean that before a prisoner is removed from the general population of an institution and placed

in segregation, he should be notified in writing of the charges and nature of the evidence against him and be given a reasonable opportunity to explain away the accusation. We are also of the opinion that in times of emergency situations, such process may be postponed and emergency action taken. But the prisoners affected should thereafter be afforded within a reasonable time the minimal due process that is stated above. For the above reasons, defendant's motion for summary judgment on this issue is denied at this time."

To the same effect is the decision of Judge Muir of the Middle District in Braxton v. Carlson, 340 F.Supp. 999 (M.D.Pa.1972) where he held that if plaintiff's contentions were all adopted, a hearing would cover the following: "(1) adequate written notice of charges, (2) a hearing before an impartial tribunal, (3) representation by private counsel or lay substitute, (4) confrontation with the witnesses against them, (5) cross-examination of such witnesses, (6) presentation of witnesses and evidence in their own behalf, (7) determination by the committee based on the relevant evidence, (8) written notice of the Committee's determination, and (9) notice of the right to appeal to the Warden." He refused to impose such requirements but he did indicate that plaintiffs were entitled at least to (1) adequate notice of charges, (2) information as to the substance of evidence against them, and (3) an opportunity to respond.

■ Considering these cases: Gray v. Creamer, supra, Urbano v. McCorkle, supra, and Braxton v. Carlson, supra, we have concluded that as a very minimum, it is required that before a prisoner is placed in solitary, punitive segregation, administrative segregation or whatever it may be termed in particular institutions, he is entitled to the following: (1) written notice of the charges against him, (2) a statement of the general nature of the evidence to support

the charges and (3) an opportunity to make a response to the charges. Further than this, we will not go. It has been commented that if the names of informants against him are given or the witnesses are required to be produced, this could very well lead to reprisals by prisoners against the witnesses and balancing the interests of all parties including the interest of the prison administration in maintaining peace and security, we will not require this.

■ We further agree with Judge Kitchen in Urbano v. McCorkle, supra, that in case of emergency threatening the security of the institution such as was testified to in this case, the prisoner may be placed in solitary or segregation without notice and without a hearing but he should immediately thereafter be informed of the charges against him and the evidence and given a chance to respond within five days thereafter. This period might be extended in case of riot or disaster. This appears to be the view taken by Judge Kitchen and would constitute the "unusual circumstances" referred to by our Court of Appeals in the quotation above set forth.

For this reason, we have determined that to the extent herein required plaintiff is entitled to declaratory and injunctive relief and we will direct that plaintiff's counsel submit a form of final decree in accordance with this opinion with copy thereof to the defendant on or before Tuesday, August 29, 1972, at 2:00 p. m.

Inasmuch as the findings of fact and conclusions of law sufficiently appear in this opinion, this will be determined as compliance with Rule 52(a).

## FINAL DECREE AND DECLARATORY JUDGMENT

And now, to wit, September 13, 1972, after hearing argument and testimony as to the form of relief to be granted in this case in accordance with the opinion and order of this court dated August 23,

1972, and after hearing testimony, it appearing to the court that the period of 5 days for preferring of charges upon transfer to segregation in case of an emergency threatening the security of the institution is too short a period of time for the investigatory procedures described by Acting Warden Waters at the hearing on August 29, 1972, and that a period of 10 days would be more appropriate.

It is ordered that a declaratory judgment be and hereby is entered declaring that the procedures employed in placing or detaining plaintiff in solitary confinement, punitive or administrative segregation without notice of charges, statement of evidence or opportunity to respond violate plaintiff's rights to due process of law as accorded him by the Fourteenth Amendment to the Constitution of the United States.

It is hereby ordered that said procedures as previously employed by defendants be and the same hereby are adjudged and declared void.

It is further ordered that a permanent injunction shall issue against defendants restraining them from placing plaintiff, causing him to be placed, or detaining him in solitary confinement, punitive or administrative segregation unless and until minimal standards of due process are met, which, at the very least must include the following:

(1) he is given express written notice of the charges against him;

(2) he is given a statement of the general nature of the evidence supporting the charges; and

(3) he is granted a hearing before a designated official whereby he will have an adequate opportunity to respond to the charges against him.

It is further ordered that such procedures are to be utilized prior to the transfer of plaintiff to segregation unless the transfer is warranted by an emergency threatening the security of the institution; in such event, the designated procedures are to be implemented within 10 days thereafter.

It is further ordered that upon consideration of plaintiff's supplemental complaint for injunctive relief filed August 23, 1972, upon which hearing was held August 29, 1972, and it appearing that plaintiff has again been placed in solitary or punitive or administrative segregation on August 16, 1972, where he remains to this date without having been accorded any written notice of the charges against him or statement of evidence supporting these charges or an opportunity to respond to them as required under our opinion dated August 23, 1972, and final orders entered in pursuance thereof on this date, September 13, 1972,

It is therefore ordered that plaintiff be immediately removed from segregation and returned to the general prison population pending proceedings which may be brought against him pursuant to the court's opinion of August 23, 1972, and orders issued pursuant thereto on September 13, 1972.

It is further ordered that plaintiff's counsel shall forthwith cause proper service of this final judgment and decree to be made upon the defendants in this case.

It is further ordered that the court shall retain jurisdiction of this proceeding for the purpose of making such further orders as may be required to effectuate the relief herein granted.