Herbert E. ROSSON

v.

Sheriff Glenn M. WEATHERHOLTZ
and James Lam, Deputy.

Civ. A. No. 75-0078 (H).

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Nov. 10, 1975.

Herbert E. Rosson, pro se.

David I. Walsh, Asst. Commonwealth Atty., Harrisonburg, Va., for respondent. ·

## OPINION AND JUDGMENT

DALTON, District Judge.

Herbert Rosson, a prisoner at the Rockingham County Jail, has filed this pro se complaint requesting injunctive relief pursuant to 42 U.S.C. § 1983. Respondents are the Sheriff and Deputy Sheriff of the Rockingham County Jail. This case is before this Court on a motion for summary judgment by respondents. In support of this motion, respondents have submitted the affidavit of James Lam, the Deputy Sheriff.

It appears that petitioner was the trustee of the jail when one day he asked for permission to enter a cell block to find out which cell a certain inmate was occupying and, as he alleges, to use the toilet. He further claims that for being caught in this cell block he was written up for an offense, and his trustee status taken away from him. Affiant Lam, however, alleges that Rosson was given permission to enter the cell block only to locate the inmate and that when Lam later saw him using the toilet he cited Rosson for an offense. He further states that because it was his sixth offense, Rosson was removed from his trustee status.

██ It is, of course, quite true that prisoners cannot be subjected to arbitrary punishment by prison officials, *Howard v. Smyth,* 365 F.2d 428 (4th Cir. 1966). However, it occurs to this Court that a position of trusteeship in a jail or prison is more than a right. It is a privilege and reward for good conduct and there is no requirement that a penal official ever bestow this reward upon any inmate. This is a matter of discretion and one to be decided as an aspect of the internal management of the institution. There is a fine line that distinguishes when a federal court ought to interfere with the inner workings of prison disciplinary matters, but such interference should most certainly not occur when a privilege which need not even be accorded a prisoner is retracted whether the retraction be arbitrary or for just cause.

The arbitrary filing of a misconduct report is a serious offense, but the focus of a federal court's inquiry should be on the punishment applied. Headway is, of course, being made in prison disciplinary proceedings where the deprivation of good time credit or disciplinary confinement is threatened, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), but *Wolff* does not go so far as to suggest such procedures should exist where lesser penalties such as the loss of privileges occur. Footnote 19 at 572. Here there is involved much less than a privilege which all inmates share. This is a privilege which the Sheriff can choose to bestow for any arbitrary reason he sees fit. Likewise, it should be one that can be taken away for any reason at all.

██ Federal courts have shown their reluctance to go behind prison officials and revise the disciplinary measures they choose to impose where such measures are truly minor. *United States ex rel. Pope v. Williams,* 326 F.Supp. 279 (E.D., Pa.1971). If harsh punishment for exercising a constitutional right was being imposed, see *Sewell v. Pegelow,* 291 F.2d 196 (4th Cir. 1961); *Knuckles v. Prasse,* 302 F.Supp. 1036 (E.D., Pa.1969), aff'd on appeal, 435 F.2d 1255 (3rd Cir. 1970), cert. denied 403 U.S. 936, 91 S.Ct. 2262, 29 L.Ed.2d 717 (1971), clearly intervention would be warranted. But there is no constitutional right to maintain

**50**

a position of trustee status in a jail. Thus, despite the factual dispute over the cause of petitioner's reprimand, still petitioner does not state a constitutional claim if the facts are construed in a light most favorable to him. It just is not cruel or unusual punishment to take away a prisoner's trustee status. Furthermore, there is nothing in *Wolff* or similar cases on prison disciplinary matters to suggest that the due process clause would require certain procedural standards before a prison official can make such a minor disciplinary decision. *Sostre v. McGinnes*, 334 F.2d 906 (2nd Cir. 1964).

In addition to this first claim, petitioner also makes three more allegations. The first of these is that his personal clothing articles were taken away from him. This Court cannot see how such action would rise to constitutional status. It is a jail regulation that no inmate is to have his personal clothing in his jail cell, except when preparing to make a court appearance. Again, this regulation is a matter for management by prison officials not to be tampered with by a federal court. Beyond this though, the mere taking of articles of clothing at most would be a matter of state law and not one protected by the Constitution. *Urbano v. Calissi*, 384 F.2d 909 (3rd Cir. 1967).

Petitioner also alleges that on August 6, 1975, he cut his finger while working in the jail kitchen and had to wait two to three hours before he could see a doctor who then refused to put stitches on petitioner's fingers. Here it appears that petitioner is merely disagreeing with the medical treatment he received. This Court has continually held that it will not second guess the prescribed treatment by a licensed physician. *Cates v. Ciccone*, 422 F.2d 926 (8th Cir. 1970). Furthermore, even in these days of advanced medical methods, a two-to-three hour wait before receiving the attention of a doctor is quite commonplace.

Petitioner's final allegation concerns a broken commode in his cell. It now appears that this toilet has been fixed and no longer overflows. Such action on the part of the jail officials renders this claim moot.

Accordingly, this Court grants summary judgment for the respondents in this case. This case is to be stricken from the docket. The Clerk of the Court is directed to send a certified copy of this opinion to petitioner and counsel for respondents.