Mark Allen **PARKER**, Plaintiff,

v.

John D. **ROCKEFELLER**, IV, et al., Defendants.

No. 80–0083–E(H).

United States District Court,
N. D. West Virginia,
Elkins Division.

Sept. 14, 1981.

Mark Allen Parker, pro se.

Joseph C. Cometti, Asst. Atty. Gen., Charleston, W.V., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Plaintiff brings the present action to recover the value of property taken from his cell during a shake down at the West Virginia State Penitentiary. He alleges that "they [state troopers and prison guards] stripped me and removed all personal prop-

erty remaining in my cell ... these items of personal property were thrown into a large pile on the floor, spit on by a state trooper with tobacco juice, and then swept across the floor through garbage, put in trash bags and thrown away." The named Defendants were not personally involved in the actions complained of. Rather, it is alleged that they are liable because they were responsible for ordering and carrying out of all actions during the time in question.*

The Defendants move to dismiss this action on the basis that it does not state a cause of action pursuant to 42 U.S.C. § 1983, and even if it does, that they are not personally responsible for any deprivation of rights secured by the Constitution or other law of the United States. In considering Defendants' motion this Court must consider all of Plaintiff's allegations as true and refer only to the allegations existing in Plaintiff's complaint.

In considering Defendants' assertion that the acts complained of do not state a cause of action pursuant to 42 U.S.C. § 1983, it is clear that this Court may entertain such actions only where the Plaintiff alleges that he has suffered a deprivation of some right secured by the Constitution or some other law of the United States. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In the present case, Plaintiff has asserted in vivid terms that certain custodial officers showed a marked disregard for his property. Although negligent conduct of custodial officers resulting in the loss of a prisoner's property does not state a claim under Section 1983, a gross culpable negligence or intentional act may state a cause of action. See *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir. 1978) *mod.* en banc, 545 F.2d 565 (1976)

---

* This Court has entertained many complaints by inmates concerning actions taken at the State Penitentiary on or about November 28, 1979. The Plaintiff here alleges that the shake down took place on November 28, 1979. He also alleges that Governor Rockefeller gave the orders causing the state police to enter the prison. The Court has been made aware in several prisoner trials concerning actions taken by state police and prison guards during this time period that there existed a state of emergency and that extraordinary measures were taken to restore order at the State Penitentiary. This state of emergency situation is alleged to have been in effect in the Defendants' answer. The Court is aware that this situation is beyond the scope of a motion to dismiss and confines this motion's analysis solely to Plaintiff's complaint.

*cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), and *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970).

In the most recent case on point by the Supreme Court, several guiding considerations were discussed concerning whether a loss of property resulted in a deprivation of the right to due process secured by the Fourteenth Amendment of the Constitution. In the case of *Parratt v. Taylor,* —— U.S. ——, —— – ——, 101 S.Ct. 1908, 1912–1917, 68 L.Ed.2d 420 (1981), the Court held that state procedures available to a state prisoner confined in a prison in Nebraska provided sufficient process due under the circumstances. The Court stated:

"Although [plaintiff] has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure." *Id.* at ——, 101 S.Ct. at 1917.

The Court analyzed the situation in terms of whether the Due Process Clause of the Fourteenth Amendment required a pre-deprivation hearing or whether the established post-deprivation hearing provided by the State of Nebraska was sufficient to redress any deprivation the plaintiff in the *Parratt* case may have suffered. The Court noted that there was no contention that the post-deprivation procedures were inadequate, and there was no contention that it was practicable for the State to provide a pre-deprivation hearing. In striking a balance between the necessity of process before or after the deprivation the Court looked to the rationale of its decision in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), where it was confronted with the claim that corporal punishment in public schools violated due process. The *Parratt* Court noted that the facts presented to it in the *Ingraham* case were more egregious because in that case the Court was confronted with both an intentional act and a deprivation of liberty as opposed to negligent conduct and a deprivation of property. Nevertheless, the *Ingraham* Court reasoned that:

"'At some point the benefit of an additional safeguard to the individual affected ... and to society in terms of increased assurance that the action is just may be outweighed by the cost.' *Mathews v. Eldridge,* [424] U.S. [319], at 348 [96 S.Ct. 893, at 909, 47 L.Ed.2d 18]. We think that point has been reached in this case. In view of the low incidence of abuse, the openness of our schools, *and the common-law safeguards that already exist,* the risk of error that may result in violation of a school child's subsequent rights can only be regarded as minimal. Imposing additional administrative safeguards as a constitutional requirement might reduce that risk marginally, but would also entail a significant intrusion into an area of primary educational responsibility." 430 U.S. at 682. Also quoted in *Parratt, supra,* —— U.S. at ——, 101 S.Ct. at 1916. Emphasis supplied as quoted in the *Parratt* case.

Because the *Parratt* case only addressed a negligent loss of property, it is unclear whether the *Ingraham* rationale was meant to be extrapolated to a willful destruction of property in a prison setting.

■ In *Jenkins, supra,* the court was confronted with a plaintiff who was injured as a direct consequence of the defendant state policeman's wanton conduct in the course of apprehension. The court noted that the injury resulted from a constitutional deprivation. The court analyzed the deprivation as follows:

"The constitutional right to be free from unreasonable interference by police officers is uncontrovertable. The Constitution has long been interpreted to embrace security from 'arbitrary intrusion by the police.' *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1948). This concept was reaffirmed when *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) made the Fourth Amendment fully applicable to the states. It should not be forgotten that the Fourth Amendment expressly declares 'the right of people to be secure in their

*persons ... against* unreasonable searches and seizures.' And 'this inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs.' *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

It is likewise clear that this shield covers the individual's physical integrity. Injuries arbitrarily inflicted by the police are constitutionally cognizable and remediable." 424 F.2d at 1232.

Although there is a right to be secure in one's person, there is no constitutional right to be secure in one's personal belongings while confined in prison. *Rosson v. Weatherholtz*, 405 F.Supp. 48 (W.D.Va.1975). *Cf. Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972) (the taking of a prisoner's shoes does not state a claim under Section 1983.)

■ Even though Plaintiff may not have a constitutional right to be secure in his property, he retains the right not to be deprived of his property without due process of law. In *Kimbrough v. O'Neil*, 545 F.2d 1059 (7th Cir. 1976), the Court held that an intentional taking of a claimant's property by a state agent violates the Due Process Clause of the Fourteenth Amendment and is actionable under Section 1983. This line of thinking is consistent with Justice Powell's concurrence in *Parratt*, wherein he stated:

"The Due Process Clause imposes substantive limitations on state action, and under proper circumstances those limitations may extend to intentional and malicious deprivations of liberty and property, even where compensation is available under state law." —— U.S. at ——, 101 S.Ct. at 1921–22 (Powell concurring).

Also, the legislative history of Section 1983 discloses that Congress intended to provide a deterrent for official misconduct. *Monroe v. Pape*, 365 U.S. 167, 172 to 183, 81 S.Ct. 473, 476 to 482, 5 L.Ed.2d 492 (1961). *Kimbrough, supra*, at 1061.

In the State of West Virginia there exists a forum in which claims against the State may be maintained. *W.Va.Code*, § 14–2–1,

*et seq.* Specifically, this forum has jurisdiction over the loss complained of in the instant action. *W.Va.Code*, § 14–2–13. If Plaintiff's allegations were to allege mere negligence, the availability of the state remedy would provide sufficient process due to Plaintiff. Because Plaintiff has alleged culpability on the part of certain State agents which transcends mere negligence, this Court may not dismiss the present action on the basis of the Court's analysis in *Parratt*. Rather, had Plaintiff brought this action against the proper parties it would be necessary for the Court to inquire further into the circumstances of Plaintiff's allegations.

■ The Defendants Plaintiff is attempting to sue in the present case, however, are not the perpetrators of the acts to which Plaintiff complains. The Defendants sued are the Governor of the State of West Virginia, the Commissioner of the Department of Corrections, and the Warden of the Penitentiary. Plaintiff contends that these individuals are liable for the following reasons:

"Mr. John D. Rockefeller, IV, Governor of West Virginia, gave the orders causing the state police to enter the prison and stated, personally, on TV that he accepted full responsibility for anything that happened because of his orders ... Mr. Mooney, State Police Supervisor, was directly in command of the troopers stationed at the prison and had to approve the troopers' removing and destroying of the property of the inmates housed in the North Hall, and should be responsible for the troopers' actions ... Mr. Richard G. Mohn, Warden W.V.P., was in command of the prison guards who were involved in the removal and destruction of the property of the inmates housed in North Hall and would have to approve such action before its occurrence."

Thus, Plaintiff concludes that the Defendants are liable because of their supervisory positions. There is no allegation that these Defendants personally directed, or had actual knowledge of the alleged actions of the troopers or guards.

This Court finds that the Plaintiff's complaint does not state a cause of action against the Defendants in this case. In *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977), the Court held that the doctrine of respondeat superior generally is not applicable to Section 1983 suits. A higher official may only be liable for acts of a subordinate where he actually participates or acquiesces in the alleged violation. *Harris v. Chanclor*, 537 F.2d 203 (5th Cir. 1976).

Accordingly, Defendants' motion to dismiss is granted, but without prejudice to reinstitute the action against the proper parties.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to Plaintiff and to counsel of record.