Jack Burton TUNNELL

v.

**OFFICE OF PUBLIC DEFENDER,
et al.**

Civ. A. No. 81–2306.

United States District Court,
E.D. Pennsylvania.

March 23, 1984.

Janet W. Mason, German, Gallagher & Murtagh, Philadelphia, Pa., for plaintiff.

Marc G. Brecher, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

LOUIS H. POLLAK, District Judge.

In 1981, plaintiff Jack G. Tunnell, proceeding *pro se*, filed this action against the Office of the Public Defender of Montgomery County, the Montgomery County Sheriff, and a correctional officer and the superintendent at the State Correctional Institution at Graterford, Pennsylvania, alleging various violations of plaintiff's civil rights. In March 1982, this court approved and adopted a report and recommendation of United States Magistrate William F. Hall, Jr. and dismissed the claims against the Montgomery County Sheriff and the Office of the Public Defender of Montgomery County.

Although counsel had been appointed in August 1981 to represent plaintiff in this action, plaintiff filed a *pro se* appeal of this court's March 1982 order. That appeal was dismissed in June 1982; but, apparently due to a lack of communication between the parties and the Court of Appeals, the parties did not become aware of the dismissal until late 1983. At that time, defendants L. Lorenzo Alleyne (improperly designated in the complaint as Arlene) and Julius T. Cuyler filed a "cross motion" for summary judgment.[1] Plaintiff responded to that motion in December 1983.

In order to understand the different claims which plaintiff alleges against defendants, it is useful to have a general understanding of the factual allegations made by plaintiff. In 1981, plaintiff was subpoenaed to testify at a criminal trial in eastern Pennsylvania. At that time, he was incarcerated in a state facility in Pittsburgh. In order to allow plaintiff to appear at the criminal trial for which he had been subpoenaed, he was transferred to the state facility at Graterford. At that time

---

1. At the time that the "cross-motion" was filed, there was already pending before this court a *pro se* motion for summary judgment which had been filed by plaintiff. That motion has since been withdrawn and the only motion now pending is the "cross-motion" of defendants Alleyne and Cuyler. The "cross-motion" will be referred to as defendants' "motion" for summary judgment throughout this opinion.

defendant Alleyne was a correctional officer at the Graterford facility and defendant Cuyler was the superintendent of the Graterford facility.

Plaintiff alleges that, when he arrived at Graterford, personal property which he had brought with him from Pittsburgh was taken from him by defendant Alleyne. Plaintiff was then placed in the Restricted Housing Unit (RHU) rather than being placed in the general prison population. Plaintiff was never informed of the reasons for the decision to place him in the RHU or allowed any opportunity to express his position on the decision.

Plaintiff remained at Graterford and in the RHU for twelve days. Plaintiff alleges that while there he made numerous attempts to submit complaints about the conditions in the RHU to defendant Cuyler but those complaints were ignored.

When plaintiff was transferred back to the Pittsburgh facility from Graterford, certain items of personal property were returned to him by an officer other than defendant Alleyne. At that time, plaintiff discovered that not all of the personal property which had been confiscated upon his arrival had been returned to him.

Plaintiff alleges three separate civil rights claims against the two remaining defendants, Alleyne and Cuyler. First, plaintiff claims that defendants violated his constitutional right to due process by failing to return all of the property taken from him when he arrived at Graterford. Second, plaintiff alleges that the conditions in the RHU at Graterford violated the Eighth Amendment to the United States Constitution. Third, plaintiff alleges that the decision to place plaintiff in the RHU without an opportunity for a hearing on the issue violated his right to due process.

The two remaining defendants have filed the present motion for summary judgment as to all claims against them and raise six arguments in support of their motion. Three of these arguments attack the viability of all of plaintiff's claims while the other three are addressed to individual claims raised by plaintiff. I will consider the narrower arguments raised by defendants' motion first.

### 1. The Failure to Return Plaintiff's Property

■ Defendants argue that *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), compels this court to grant summary judgment on plaintiff's due process claims which arise from the failure to return all of plaintiff's personal property to him. In *Parratt* the court held that prison officials could not be liable to a prisoner under § 1983 for a negligent loss of the prisoner's property when there was a state tort remedy available to the plaintiff under which he could recover for such negligence. The existence of this state law remedy was sufficient to satisfy the requirements of due process for such a negligent deprivation of plaintiff's property.

Defendants cite § 8522(b)(3) of Title 42 of the Pennsylvania Code which waives the sovereign immunity of the state in suits brought for loss of property which was under the control of state personnel. Thus, there appears to be a state tort remedy available to plaintiff for the claims brought by him involving deprivation of personal property.

Plaintiff argues that the principles of *Parratt* are not applicable in the present action because the complaint alleges that the deprivation of property was intentional. In other words, plaintiff argues that the existence of a state tort remedy may not satisfy the requirements of the due process clause when the alleged violation was intentional.

As support for that argument, plaintiff relies upon Justice Blackmun's concurring opinion in *Parratt* in which Justice White joined. That opinion states clearly that at least two of the concurring Justices would treat an intentional deprivation of property differently. 451 U.S. at 545–46, 101 S.Ct. at 1917–18. *See also Parratt* at 547, 101 S.Ct. at 1919 (Powell, J. concurring in the result).

In the three years since the decision in *Parratt,* a number of courts of appeal have considered whether *Parratt* should be extended to claims of intentional constitutional deprivations. They have arrived at conflicting conclusions. *E.g., Palmer v. Hudson,* 697 F.2d 1220 (4th Cir.1983); *Engblom v. Carey,* 677 F.2d 957 (2d Cir.1982); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981); *Yusuf Asad Madyun v. Thompson,* 657 F.2d 868 (7th Cir.1981). This issue has not yet been addressed by the Third Circuit Court of Appeals. Therefore, there is no controlling authority on the question in this circuit.

Upon review of the decisions of the various courts of appeals cited above and numerous district court decisions on the issue, I conclude that the Supreme Court's ruling in *Parratt* does not cover intentional torts. *See e.g., Borrelli v. Askey,* No. 82–4634, 582 F.Supp. 512 (E.D.Pa. February 16, 1984); *Peters v. Township of Hopewell,* 534 F.Supp. 1324 (D.N.J.1982); *Parker v. Rockefeller,* 521 F.Supp. 1013 (N.D.W.Va. 1981). First: given that *Parratt* was characterized by the Court as a negligence case and the Court's opinion does not quarrel with the limitation articulated in Justice Blackmun's concurrence, *Parratt* appears not to announce a rule applicable to intentional torts. Second: since § 1983 was designed to deter intentional misconduct by state officials, the mere existence of a state tort remedy by which plaintiff may be compensated for his loss should not preclude the availability of a § 1983 claim for intentional constitutional deprivations such as the one alleged.[2] Accordingly, defendants' motion for summary judgment will be denied to the extent that it relies upon *Parratt.*

### 2. Collateral Estoppel as to the Eighth Amendment Violations

Defendants argue that the decisions by members of this court with respect to Graterford's RHU preclude my finding in this case that the conditions in those facilities constitute cruel or unusual punishment. As support for this proposition defendants cite to Judge Lord's opinion in *Imprisoned Citizens Union v. Shapp,* 451 F.Supp. 893 (Pa.1978), which was issued after Judge Lord made an on-site inspection of the conditions in the RHU. In that opinion, then Chief Judge Lord found that conditions in the "Behavior Adjustment Unit" at the Graterford facility did not violate the Eighth Amendment.[3] Defendants also note that Judge Cahn, Magistrate Hall, and I visited the Graterford facility in 1980, but they do not cite to any decisions which were issued relating to the conditions of that facility following that visit.

The mere fact that visits in 1980 and 1978 did not lead to findings that the conditions at the RHU violated the Constitution does not require the inference that the RHU conditions in 1981, when the plaintiff was incarcerated in the RHU, passed constitutional muster. Although the decisions which resulted from these visits may be

---

**2.** Plaintiff's argument that *Parratt* does not extend to intentional torts assumes that the complaint in this action alleges that the constitutional violation in question was intentional. The complaint in this action was submitted while the plaintiff was proceeding *pro se* and should, therefore, be construed liberally. When construed quite liberally, the complaint may be seen to allege such intentional conduct on the part of defendant Alleyne. However, due to the difficulty in construing such allegations as well as other problems in this lengthy complaint, this court will, as noted later in this opinion, allow plaintiff's counsel to amend the complaint in order to reduce the complaint to more comprehensible form and to allege all of the elements of plaintiff's claims as required by the Federal Rules of Civil Procedure.

**3.** There is no evidence in the record of this action or in Judge Lord's opinion showing that the "Behavior Adjustment Unit" is the same as the RHU. If these two names do not refer to the same unit, defendants' collateral estoppel argument clearly fails and Judge Lord's findings would not be relevant in the present action.

In addition, defendants do not address the question why plaintiff would be bound by any decisions which were issued as a result of the visits discussed. If plaintiff was not a member of the plaintiff class in the cases relied upon by defendants, there would appear to be no basis for application of principles of collateral estoppel.

relevant to a determination of whether or not the conditions in 1981 were constitutionally adequate, plaintiff should be afforded an opportunity to develop evidence as to any changes in conditions at the facility between 1978 and 1981. At this stage in the proceedings and with no evidence before me that the conditions in the RHU did not decline between the times of the visits by members of this court and the time of plaintiff's incarceration, I cannot find that defendants are entitled to summary judgment as a matter of law on plaintiff's Eighth Amendment claim.[4]

### 3. *The Decision to Place Plaintiff in the RHU*

■ Defendants argue that, as a matter of law, the decision to place plaintiff in the RHU for the twelve days of his stay at Graterford without any opportunity for plaintiff to know the reasons for his segregation or to present his views is not a due process violation. Defendants rely on *Olim v. Wakinekona*, — U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). They also refer to numerous decisions of this court which have held that there is no constitutional or state law entitlement to a hearing prior to the transfer of a prisoner from one prison to another. *See e.g., Mastrota v. Robinson*, 534 F.Supp. 434 (E.D.Pa.1982); *Mack v. Johnson*, 430 F.Supp. 1139 (E.D.Pa. 1977), *aff'd mem.* 582 F.2d 1275 (3d Cir. 1978).

These decisions support defendants' argument that a prisoner has no right to a hearing prior to a transfer from one prison to another, even if that transfer results in placement in a facility in a different state. Moreover, there is no right to a pretransfer hearing even when the conditions at the transferee prison are harsher than those at the transferor prison.

Defendants then argue that these decisions should be extended to the present set of facts. Specifically, defendants contend that the due process claim does not require a hearing when a prisoner is transferred from one facility where he was in the general population to another facility in which he was immediately assigned to administrative segregation. In support of this contention, defendants rely quite heavily upon the decision in *Mack v. Johnson, supra.* In that case, the court found no due process violation in the failure to provide a prisoner with notice or an opportunity to be heard prior to or during a seven day period of incarceration in administrative segregation. The prisoner in that case had been placed in segregation upon arrival at the prison from another state facility. There was evidence presented to the court which showed that the transferee prison had a policy of placing all newly transferred prisoners into segregated housing until that prisoner's files had arrived from the transferor prison. Thus, the court found that the actions of the prison officials in placing the plaintiff in that case in segregated housing were "not only satisfactory from a constitutional viewpoint but also a prudent exercise of judgment in connection with the maintenance of security." 430 F.Supp. at 1149.

The present case is distinguishable from *Mack* on a number of significant grounds. First, plaintiff in the present case was placed in segregation for a period of twelve days, not seven. Second, the record in this case does not support the inference that the decision to place plaintiff in the RHU was grounded in a general policy under which all newly transferred prisoners were placed in segregation until a proper determination could be made as to whether or not they should be placed in the general population. The only evidence presented to this court is an affidavit from a prison official at Graterford stating that a trans-

---

**4.** Furthermore, if no opinions were issued or rulings made as a result of the 1980 visit to Graterford, it is unclear why the mere fact that

these visits occurred would be relevant to the issues in the present suit.

feree "may" be placed in segregation upon arrival.

Furthermore, in a series of cases arising in this circuit it has been recognized that as a general matter Pennsylvania prisoners have a state-created expectation, substantial enough to warrant federal constitutional protection, to (1) some notice of the reasons for an assignment to segregation and (2) some opportunity to present an opposing view. *E.g., Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Gray v. Creamer,* 465 F.2d 179 (3d Cir.1972); *Bauer v. Sielaff,* 372 F.Supp. 1104 (E.D.Pa.1974); *Lewis v. Johnson,* 383 F.Supp. 600 (E.D.Pa.1974). Whether the rights recognized in these cases extend to the facts of the present case or whether this case is more appropriately governed by *Mack* is a matter which cannot be determined on the basis of the record currently before me. Therefore, I will deny defendants' motion for summary judgment to the extent that it relies upon *Olim, Meachum* and related cases.

Defendants also present three broader challenges to the claims alleged by plaintiff.

4. *Personal Involvement of Defendants in the Constitutional Deprivations Alleged*

Defendants argue that the complaint does not sufficiently allege that each of the defendants was personally involved in the alleged constitutional deprivations and, thus, fails to satisfy the pleading requirements for § 1983. In response, plaintiff has identified individual paragraphs in the complaint which plaintiff argues do satisfy the requirements of § 1983.

Defendants are correct that liability under § 1983 can not be based upon *respondeat superior* or other forms of vicarious liability. There must be some allegation and proof of personal involvement— in the form of actual participation or acquiescence in the alleged unlawful conduct— by each defendant. *E.g., Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Commonwealth of Pennsylvania*

*v. Porter,* 659 F.2d 306 (3d Cir.1981). Under that standard, and with the evidence now before me, I conclude that plaintiff has alleged sufficient personal involvement by each defendant to allow this complaint to withstand the present motion for summary judgment.

The only claim which appears to be presented against defendant Alleyne is one for deprivation of property without due process of law. Plaintiff alleges that defendant Alleyne confiscated his personal property and that when that property was returned to him upon his departure from Graterford certain items were missing. Defendant Alleyne is correct that there are no allegations that defendant Alleyne was the person who returned the property to plaintiff. In addition, defendant Alleyne has submitted an affidavit in support of this motion describing the "normal operating procedure" for the handling of confiscated property. That affidavit also states that defendant Alleyne "had no malice or ill will towards" plaintiff.

This evidence is insufficient to warrant entry of summary judgment for defendant Alleyne. There are no statements in the affidavit as to the procedure which was followed with the particular property in question in this case as opposed to the "normal operating procedures." Furthermore, defendant Alleyne does not state in his affidavit that he was not the person responsible for the removal of certain items of plaintiff's property from the box of items confiscated from plaintiff. Since plaintiff alleges some personal involvement by defendant Alleyne in the deprivation of property and defendant has not presented adequate evidence to show that no issues of material fact remain with respect to this claim, summary judgment will not be entered for defendant Alleyne on these grounds.

There are no allegations in the complaint that defendant Cuyler had any personal involvement in the deprivation of property. The sole claims alleged against defendant Cuyler are the Eighth Amendment claim

and the claim based upon the decision to place plaintiff in the RHU without an opportunity to be heard.

Defendant Cuyler argues that the Eighth Amendment claim and the due process claim against him do not contain sufficient allegations of personal involvement for § 1983 purposes. In support of this argument, defendant Cuyler has submitted an affidavit which states that subordinates of his were in charge of the RHU and were responsible for the decisions relating to plaintiff's placement in the RHU.

Plaintiff has identified paragraphs within the complaint which state that defendant Cuyler either knew of or acquiesced in the constitutional violations alleged. Such involvement in the constitutional violations, if proven, would be sufficient for liability under § 1983. The fact that defendant Cuyler delegated to subordinates responsibility for the condition of the RHU or for the determinations of where to place transferees within the prison is not sufficient to warrant summary judgment in this action in the face of plaintiff's allegations of personal involvement. Defendant Cuyler's affidavit does not provide any evidence to refute plaintiff's allegations of knowledge or acquiescence on the part of defendant Cuyler. Thus, there remain issues of fact to be resolved before judgment can be entered on these claims. Accordingly, defendant Cuyler's motion for summary judgment will be denied insofar as it relies upon defects in plaintiff's complaint.

Although the complaint in this action, read liberally as is appropriate for a *pro se* complaint, can withstand the present motions for summary judgment, it is quite difficult to parse its lengthy allegations and to identify the nature of the individual constitutional violations alleged or which facts relate to any particular violation. In fact, if plaintiff had not identified the relevant portions of the complaint in the response to the present motion, it would have been very difficult to extract from the complaint the allegations of personal involvement or intentional conduct on which the decisions made earlier in this Memorandum Opinion were based.

In the brief submitted by plaintiff in response to the present motion for summary judgment, plaintiff suggests that this court should grant leave to submit an amended complaint to correct any deficiencies discovered in the course of ruling upon this motion. Due to the difficulty this court has had in determining from the complaint which facts fit within which constitutional claims, which defendants are potentially liable under which claims, and what constitutional violations are actually alleged, it would be very useful if the complaint could be amended to eliminate all claims which have been dismissed or which plaintiff does not wish to pursue. At the same time, plaintiff's counsel can undertake to conform the pleadings to the Federal Rules of Civil Procedure and to allege in proper fashion the facts which underlie each of the remaining claims. Such an amended complaint should help focus the claims in a manner which will facilitate discovery and the ultimate resolution of this case. Therefore, plaintiff's request will be treated as a motion to amend the complaint and that motion will be granted, provided that plaintiff submits any such amended complaint within twenty days of the date of the Order accompanying this Memorandum Opinion, and further provided that the amended complaint eliminates those claims which were previously dismissed and conforms to this Memorandum Opinion.

5. *Qualified Immunity*

■ Both defendants argue that they are entitled to qualified immunity from liability as to all of plaintiff's claims under the standard enunciated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That decision held that summary judgment was warranted in favor of state officials on § 1983 claims when the conduct of those officials does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 102 S.Ct. at 2738. As

is apparent in the discussion of the first three arguments in support of the motion for summary judgment, the state of the law with regard to each of the alleged constitutional violations did not at the relevant times so clearly support defendants' actions that it can be found as a matter of law that defendants are entitled to "good faith" immunity from suit under *Harlow*. This determination does not preclude such a finding at a later point in the action on the basis of a more fully developed record.

### 6. *Limitations on Suits Under the Eleventh Amendment*

■ Defendants argue that this court lacks jurisdiction over this action due to the limitations on suits against states imposed by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

The Supreme Court has consistently held that by virtue of this amendment an unconsenting state is immune from federal court suits brought by its own citizens or by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Furthermore, (putting aside cases illustrative of the rule in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, discussed *infra*), a suit against a state official for actions taken in his official capacity is equivalent to an action against the state for purposes of the Eleventh Amendment. *See Pennhurst State School and Hospital v. Halderman*, —— U.S. ——, ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

Defendants argue that because there is no state statute which waives Pennsylvania's immunity from suit for cases such as this one, and because defendants are being sued for actions taken in their official capacities, the Eleventh Amendment bars this action. Plaintiff does not directly address these arguments but merely states that *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), implicitly overrules any such limitations on this § 1983 action. However, *Monell* involved claims against a municipality, not a state or state official, and hence is not pertinent.

■ Nonetheless, the Eleventh Amendment does not preclude this suit. In the recent Supreme Court decision in *Pennhurst State School and Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Court reviewed the key decisions interpreting the Eleventh Amendment throughout this century. The majority opinion notes that *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), created an exception to the general rule that a suit against a state official for actions taken in his official capacity is precluded by the Eleventh Amendment. The decision in *Ex Parte Young* allowed a suit to proceed in federal court against a state official for official acts when the suit challenged the constitutionality of that state official's actions. Therefore, under *Ex Parte Young*, this suit may proceed because it alleges that the actions taken by defendants as state officials acting in their official capacities violated plaintiff's constitutional rights.

Although *Ex Parte Young* has never been overruled, the exception created by that decision has since been limited. For example, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), held that the Eleventh Amendment bars suits which seek money damages from the public treasury even though such suits fit within the exception created by *Ex Parte Young*. As a result of these later decisions, the primary issue for a federal court to consider, when a suit is brought against a state official alleging constitutional violations, is whether the type of relief sought would be precluded by the Eleventh Amendment. *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981).

The complaint in the present action requests relief in the form of an injunction, declaratory relief, and payment of money damages. As *Edelman v. Jordan, supra,* makes clear, the declaratory and injunctive relief sought are not precluded by the Eleventh Amendment. But *Edelman* also teaches that when damages are sought against persons solely in their official capacities, the recovery prayed for would, if allowed, come from the public treasury of the state and hence such claims would be barred by the Eleventh Amendment. *See also Rutledge v. Arizona Board of Regents, supra; Heisse v. State of Vermont,* 519 F.Supp. 36 (D.Vt.1980); *King v. Carey,* 405 F.Supp. 41 (W.D.N.Y.1975); *Klein v. New Castle County,* 370 F.Supp. 85 (D.Del. 1974). Therefore, to the extent that plaintiff seeks money damages from defendants in their official capacities, plaintiff's claims are dismissed.

## ON MOTION FOR RECONSIDERATION

On March 23, 1984, I issued a Memorandum Opinion and Order denying defendants L. Lorenzo Alleyne and Julius T. Cuyler's motion for summary judgment and allowing plaintiff time in which to file an amended complaint. On March 28, 1984, defendants filed a motion for reconsideration of that ruling. Plaintiff responded to that motion for reconsideration on April 23, 1984.

Defendants' motion for reconsideration is based entirely upon their construction of one sentence within the discussion of qualified immunity in the March 23 Memorandum Opinion. In the portion of the Memorandum Opinion which preceded the qualified immunity discussion, I had held that defendants' challenges to the viability of each of plaintiff's individual constitutional claims did not support summary judgment for defendants. First, I found that defendants were not entitled to summary judgment on plaintiff's claim for deprivation of property under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because plaintiff had alleged that the deprivation was intentional. Second, I determined that defendants' argument that plaintiff's Eighth Amendment claims were collaterally estopped did not warrant summary judgment since there was no evidence that another court had found that the conditions of the Restricted Housing Unit at the Graterford facility met constitutional standards at the time in question. Third, I concluded that I could not grant summary judgment on plaintiff's due process claim related to the decision to place plaintiff in the Restricted Housing Unit under the current state of the record because the facts surrounding that decision were not sufficiently developed.

The sentence upon which defendants base their motion for reconsideration reads as follows:

> As is apparent in the discussion of the first three arguments in support of the motion for summary judgment, the state of the law with regard to each of the alleged constitutional violations did not at the relevant times so clearly support defendants' action that it can be found as a matter of law that defendants are entitled to "good faith" immunity under *Harlow.*

Memorandum Opinion at 15. Defendants contend that this sentence reflects a misinterpretation of the standard for qualified immunity set forth by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In that opinion, Justice Powell, writing for the majority, stated:

> ... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 2738. The Court of Appeals for the Third Circuit has noted that when faced with a motion for summary judgment which rests, at least in part, upon a claim of qualified immunity,

> "the judge appropriately may determine not only the currently applicable law, but whether that law was clearly established

at the time the action occurred." *Id.* (footnote omitted). If the law was not clearly established, the defendant will prevail on summary judgment on the basis of the qualified immunity defense, *id.* at 818, 102 S.Ct. 2739, unless the plaintiff claims that the official actually knew that s/he was violating the law. *See id.* at 821, 102 S.Ct. 2470 (Brennan, J. concurring). If, on the other hand, the applicable law was clearly established, then, as the Court noted in *Harlow*, it should have been known to "a reasonably competent public official," and the qualified immunity defense "should ordinarily fail" unless the defendant "claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard."

*Czurlanis v. Albanese*, 721 F.2d 98, 108 (3d Cir.1983).

Defendants suggest that my statement that the law did not "so clearly support" defendants' actions misapplies *Harlow* because good faith immunity is warranted unless the law is clearly established that the official's actions were unconstitutional. Although that one sentence from my Memorandum Opinion could be construed to require defendants to show that the law was clearly established in their favor rather than to require a showing that the law was not clearly established against them, when read in the context of the entire Memorandum Opinion, it becomes evident that defendants' motion was denied for failure to meet the latter standard. Under the current state of the record in this action, I cannot state with certainty that plaintiff cannot show that defendants violated plaintiff's clearly established constitutional rights.

First, with reference to plaintiff's claim of intentional deprivation of property, defendants argue that my Memorandum Opinion "acknowledged the unsettled state of the law" on the applicability of *Parratt* to intentional torts. Memorandum in Support of the Motion for Reconsideration at 3. However, my Memorandum Opinion notes only that from mid-1981 to the present, there has been some disagreement in the decided cases over whether *Parratt* should be extended to relieve officials from liability for intentional torts.

The courts which disagree about this aspect of *Parratt* have not questioned the proposition that the law prior to *Parratt* clearly established liability for intentional torts under § 1983. In fact, the majority opinion in *Parratt* reflects the assumption that the law with respect to liability for intentional torts is settled.

> Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights. In *Baker v. McCollan, supra* [443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433], we suggested that simply because a wrong was negligently as opposed to intentionally committed did not foreclose the possibility that such action could be brought under § 1983.

*Id.* 451 U.S. at 534, 101 S.Ct. at 1912.

■ The issue which I addressed on pages 4 through 6 of my Memorandum Opinion was not whether intentional torts generally support § 1983 liability. That was not questioned in *Parratt* and the *Parratt* decision did not, in terms, deal with intentional conduct. I was asked only to consider whether the *rationale* of *Parratt* could be applied to relieve defendants from liability in this case due to the availability of a state law remedy. I was not persuaded by the arguments in support of such an extension of the *Parratt* rationale and declined to depart in this way from the "clearly established" law. In so doing, I recognized that other courts had reached the opposite conclusion. However, the mere fact that the scope of liability under § 1983 may be in the process of shrinking should not afford state officials the opportunity to avoid liability under the guise of qualified immunity.

■ *Harlow* sought to protect state officials from expansions of the scope of § 1983 liability by allowing them to rely upon the "clearly established" law. Under *Harlow*, such officials need not be clairvoy-

ant or constantly abreast of the most recent trial court decisions to perform their duties and avoid liability—they can rely upon the last clear statement of the law without fear of future liability for actions for which were not known to be improper at the time they were performed.

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful...
>
> ... Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

*Harlow, supra* at 2739.

Defendants' argument in the present case seeks to use *Harlow* as a shield from liability under the opposite circumstances. They suggest that because the scope of liability under § 1983 may be shrinking, they should now be able to take advantage of that potential future state of the law in the guise of "qualified immunity." Although this argument relies upon the language of *Harlow*, it ignores the logic which underlay that decision. *Harlow* was not designed to free officials from constitutional limitations on their actions each time an area of constitutional law was in a state of flux. It was merely meant to protect their justifiable reliance on the last clear statement of the law.

As I have already noted, the "clearly established" law of which defendants were or should have been aware at the time of the constitutional deprivation in question would impose liability for intentional torts. Thus, under *Harlow* defendants are not entitled to qualified immunity for such an intentional deprivation.

Furthermore, defendants have not cited and I have not discovered any decisions prior to the date of the alleged constitutional deprivation at issue in this action which suggested that *Parratt's* rationale should be extended to intentional torts. Thus, even if *Harlow* could be interpreted as defendants suggest, the possibility of an extension of *Parratt* to intentional torts had not arisen in the courts at the time of the alleged constitutional deprivation in this case and thus, even if the law is unsettled for purposes of *Harlow* at the present time, it was not unsettled at the time of defendants' actions.

■ Second, with respect to plaintiff's Eighth Amendment claim, defendants argue that the 1978 and 1980 visits to the Restricted Housing Unit by federal judges and the resulting determinations that the conditions at those times did not violate the Eighth Amendment are "relevant to defendant Cuyler's entitlement to qualified immunity." Memorandum in Support of Motion for Reconsideration at 4. However, there is no evidence of record at this time that the conditions in the Restricted Housing Unit had not changed between the time of these visits and the dates in question in this action.[1] If those conditions had deteriorated since the time of the judicial visits, these decisions would not necessarily lend any support to a claim of immunity. On a motion for summary judgment, I cannot assume that the facts are as the moving party alleges unless these facts are supported by uncontradicted evidence or they

---

1. Defendants now cite two other opinions of this court involving the conditions of the Restricted Housing Unit. *Clifton v. Robinson,* 500 F.Supp. 30 (E.D.Pa.1980); *Jordan v. Robinson,* No. 80–2053 (E.D.Pa. August 27, 1982). However, the last visit to Graterford on which these decisions are based occurred in mid-1980, more than one-half year prior to plaintiff's incarceration in the Restricted Housing Unit. In addition, each of these decisions relied upon visits to the Graterford facility which had taken place within one or two months of the time of the alleged deprivation.

Furthermore, the latter opinion notes that the fact that the confinement to the Restricted Housing Unit occurred during the time of a state of emergency must be taken into account in determining whether the conditions pass constitutional muster. No such emergency situation is alleged to have existed at the time relevant to the present litigation.

are conceded by the nonmoving party. Neither is true in the present case with regard to the conditions of the Restricted Housing Unit. Thus, on the current state of the record in this action, I cannot conclude as a matter of law that defendants are entitled to qualified immunity with regard to plaintiff's Eighth Amendment claim.

Third, with regard to plaintiff's due process claim involving the decision to place plaintiff in the Restricted Housing Unit, defendants argue that the law at the time of the alleged constitutional deprivation did not clearly establish that defendants could be liable for this conduct. In support of this argument, defendants cited *Helms v. Hewitt*, 655 F.2d 487 (3d Cir.1981) *rev'd on other grounds, Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1982), one of the opinions cited in my Memorandum Opinion for the proposition that plaintiff has a right to some notice and opportunity to be heard prior to or soon after assignment to segregation. Defendants note that this decision of the Third Circuit Court of Appeals was issued after the alleged constitutional deprivation in the present case. However, defendants failed to note that the decisions in *Gray v. Creamer*, 465 F.2d 179 (3d Cir.1972); *Bauer v. Sielaff*, 372 F.Supp. 1104 (E.D.Pa. 1974); and *Lewis v. Johnson*, 383 F.Supp. 600 (E.D.Pa.1974), also recognized a due process interest under these circumstances although they did not base this interest upon the same grounds as the *Helms* decision. Long before the alleged deprivation in the present action, these decisions had clearly established some right to due process when a prisoner is placed in segregation.

Defendants correctly note that *Mack v. Johnson*, 430 F.Supp. 1139 (E.D.Pa.) *aff'd mem.* 582 F.2d 1275 (3d Cir.1978), found no need for notice and hearing prior to segre-

gation under the facts of that case. However, without further factual development in this action as to the circumstances surrounding the placement of plaintiff in the Restricted Housing Unit, I cannot determine whether this case more closely resembles the situation in *Mack* or in *Gray* and its progeny. Likewise, any determination of the availability of qualified immunity for defendants for this decision must await further development of the record since the issue of qualified immunity will necessarily turn upon whether the facts of the present case are so similar to *Gray* and its progeny that defendants would be expected to be aware of the clearly established law creating liability for their actions.[2]

Accordingly, defendants' motion for reconsideration will be denied in an appropriate order.

---

**2.** In a footnote, defendants allude to a distinction between administrative and punitive segregation drawn in *Helms*. Defendants do not suggest how this distinction is relevant to the issue of qualified immunity and they did not raise this distinction in support of any of the other claims in their motion for summary judgment. Therefore, I will not consider the possible importance of this distinction until it has been raised and properly briefed by both sides in this action.